| | |
|---|---|
| **OUTTEN & GOLDEN LLP** | **SHAVITZ LAW GROUP, P.A.** |
| Justin M. Swartz | Gregg I. Shavitz (admitted *pro hac vice*) |
| Michael N. Litrownik | Paolo Meireles (admitted *pro hac vice*) |
| 3 Park Avenue, 29th Floor | 1515 South Federal Highway, Suite 404 |
| New York, New York 10016 | Boca Raton, Florida 33432 |
| Telephone: (212) 245-1000 | Telephone: (561) 447-8888 |
| Facsimile: (212) 977-4005 | Facsimile: (561) 447-8831 |

Jennifer L. Liu
1 Embarcadero Center, Suite 3860
San Francisco, California 94111
Telephone: (212) 638-8800
Facsimile: (646) 509-2092

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA MILLS, RHONDA JONES, LAUREL MARTIN, WILLIAM SCOTT-SELGADO, KRISTEN SMITH, BRAD SALAZAR, VERONICA SANDOVAL-WANG, and JEAN ALONGE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>     -against-<br><br>CAPITAL ONE, N.A.<br><br>                    Defendant. | No. 14 Civ. 1937 (SHS) (HP) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
<u>APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT</u>**

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel herein, and co-chair of its Class Action Practice Group. O&G is a 35+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## My Background and Experience

4. I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors. Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5. I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002. I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois. I am a member in good standing of each of these bars.

6. From September 1998, through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases. From March 2002, through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7. Since joining O&G in December 2003, I have been engaged primarily in

prosecuting wage and hour class and collective actions and class action discrimination cases.

8.      I am or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008).  Others include *Clem v. KeyBank*, No. 13 Civ. 789, 2014 WL 2895918, at *2-4 (S.D.N.Y. June 20, 2014) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (same); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-4 (E.D.N.Y. Aug. 6, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Palacio v. E*TRADE Financial Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1-2 (S.D.N.Y. Mar. 12, 2012) (certifying class and approving settlement of wage and hour class action brought under New York, California, and federal law);  *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (same); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 287, 2009 WL 6490084, at *1-3 (E.D.N.Y. June 26, 2009) (same); and *Damassia v. Duane*

*Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action).

9. I am a member of the National Employment Lawyers Association ("NELA") and serve on the Executive Board of its New York Chapter ("NELA/NY"). I am co-chair of NELA's Fair Labor Standards Act Committee. I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005. I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee. I also serve on the Recent Graduate Advisory Group of the New York University Center for Labor and Employment Law.

10. I speak frequently on employment law issues, including wage and hour issues and discrimination issues. I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments. I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

12. Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions. *See, e.g.*, *Clem v. KeyBank*, No. 13 Civ. 789, 2014 WL 1265909, at *5-6

(S.D.N.Y. Mar. 27, 2014) (appointing O&G and Shavitz Law Group as class counsel and noting that "[c]ourts have repeatedly found O & G and the Shavitz Law Group to be adequate class counsel in wage and hour class actions"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (same); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *4 (S.D.N.Y. Nov. 15, 2012) (appointing O&G and SLG as class counsel, noting both firms' "years of experience prosecuting and settling wage and hour class actions"); *Toure*, at *5 ("Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Palacio*, 2012 WL 1058409, at *2 ("O & G has extensive experience prosecuting and settling nationwide wage and hour class and collective actions and ar[e] well-versed in wage and hour and class action law"); *Johnson*, 2011 WL 1872405, at *2 ("Outten & Golden . . . have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) ("Outten & Golden [lawyers] . . . are skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions.").

**Thorough Investigation of the Class Claims**

13.     This proposed settlement would resolve claims brought by Plaintiffs Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar,

5

Veronica Sandoval-Wang, and Jean Alonge ("Plaintiffs") on behalf of themselves and other similarly situated Assistant Branch Managers ("ABMs") and those in comparable positions employed by Capital One, N.A. ("Defendant") (collectively, the "Class Members"), alleging that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them and other ABMs overtime wages.

14. Before the initiation of this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

15. We conducted in-depth interviews with the eight Plaintiffs and the three Opt-In Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. We also obtained and reviewed numerous documents from Plaintiffs related to their employment with Defendant, including pay records, incentive plans, handbooks, guides, training materials, emails, memos, calendars, and resumes.

16. We conducted in-depth background research on Defendant, including reviewing corporate documents and SEC filings, to obtain information on Defendant's corporate structure and facilities. We also obtained numerous job postings for the ABM position from across the country to determine the nature of the duties and responsibilities of the position.

**Settlement Negotiations**

17. On July 18, 2013, we sent Defendant a letter in which we summarized our clients' potential claims and invited Defendant to engage in pre-litigation settlement discussions.

18. In response to the letter, the parties agreed to discuss a possible resolution of Plaintiffs' claims. The parties also entered into a confidentiality agreement and agreed to exchange data to assess the claims and calculate damages.

19. Defendant also produced personnel documents relating to several of the Named and Opt-In Plaintiffs that were relevant to both liability and damages issues.

20. Prior to the parties' mediation, the parties engaged in correspondence and conference calls in which they vigorously debated their respective positions. Plaintiffs also obtained detailed declarations from seven of the Plaintiffs and Opt-In Plaintiffs to help support their factual claims at the mediation.

21. On March 7, 2014, the parties attended a full day mediation session in New York with Michael E. Dickstein, Esq., a well-known and experienced mediator in wage and hour law. At the mediation, the parties reached agreement on the settlement amount and several other key terms.

22. During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement") executed by the parties on or about July 29, 2014. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A.**

23. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis.

**Litigation**

24. On March 19, 2014, after mediation but prior to reaching agreement on all material terms of the settlement, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves

and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, New Jersey, and Maryland by improperly classifying ABMs as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.

**Settlement Terms and Allocation Formula**

25. The Settlement Agreement creates a common fund of $3,000,000 (Three Million Dollars) to settle claims against the Defendant (the "Fund"). Ex. A (Settlement Agreement) § 3.1(A). The Fund covers Class Members' awards, service payments, attorneys' fees and costs, settlement administrator's fees and costs, and any fees and costs associated with investing and liquidating the Fund. Ex. A (Settlement Agreement) § 3.1(A). Defendant will pay all applicable employer-side payroll taxes. Ex. A (Settlement Agreement) § 3.5(C).

26. Class Members who are entitled to receive payments from the Fund include two groups of persons employed by Defendant as ABMs:

    a. Rule 23 Class: The Rule 23 class consists of the following three sub-classes of individuals ("Rule 23 Class Members"):

        i. New York Class Members: The "New York Class Members" consist of all individuals who were employed as ABMs by Defendant in the State of New York from March 7, 2008 through July 7, 2014;

        ii. New Jersey Class Members: The "New Jersey Class Members" consist of all individuals who were employed as ABMs by Defendant in the State of New Jersey from March 7, 2012 through July 7, 2014; and

        iii. Maryland Class Members: The "Maryland Class Members" consist of all individuals who were employed as ABMs by Defendant in the State of Maryland from March 7, 2011 through July 7, 2014; Ex. A (Settlement Agreement) § 1.27.

    b. FLSA Class Members: "FLSA Class Members" consist of any and all current and former ABMs employed by Defendant from March 7, 2011 through and including July 7, 2014. Ex. A (Settlement Agreement) § 1.14.

8

27. The "Net Settlement Fund" is the Fund less: (i) all settlement administration fees, costs, and expenses; (ii) court-approved attorneys' fees and costs; (ii) court-approved service payments to Plaintiffs and certain Opt-In Plaintiffs; (iii) the Claims Administrator's fees and costs; and (iv) a $75,000 reserve fund to cover errors and omissions and approved additional claims ("Reserve Fund"). Ex. A (Settlement Agreement) § 1.18.

28. Each New York Class Member who is not subject to a prior release of state law overtime claims for any weeks worked in New York between March 7, 2008 and July 7, 2014, shall be assigned three points for each week worked as an ABM in New York between March 7, 2008 and July 7, 2014. Ex. A (Settlement Agreement) § 3.4(B)(1).

29. Each New York Class Member who is subject to a prior release of state law overtime claims shall be assigned one point for each week worked as an ABM in New York, and subject to such prior release, between March 7, 2008 and July 7, 2014. Ex. A (Settlement Agreement) § 3.4(B)(1).

30. Each New Jersey, Maryland, and FLSA Class Member who is not subject to a prior release of state law overtime claims for any weeks worked in a state other than New York between March 7, 2011 and July 7, 2014, shall be assigned three points for each week worked as an ABM in any state other than New York between March 7, 2011 and July 7, 2014. Ex. A (Settlement Agreement) § 3.4(B)(2).

31. Each New Jersey, Maryland, and FLSA Class Member who is subject to a prior release of state law overtime claims shall be assigned one point for each week worked as an ABM in any state other than New York between March 7, 2011 and July 7, 2014. Ex. A (Settlement Agreement) § 3.4(B)(2).

32. The Claims Administrator will then divide the total number of points for each class member by the total number of points for all class members to determine each Class Member's portion of the Fund. Ex. A (Settlement Agreement) § 3.4(B)(a), (b). The Claims Administrator will then multiply each Class Member's portion of the Fund by the Fund to determine the amount to be paid to each Class Member, the "Notional Settlement Award." Ex. A (Settlement Agreement) § 3.4(B)(c).

33. If a Class Member's Notional Settlement Award is equal to or less than $50 (a "Minimum Award Class Member"), he or she will be offered $50, and the aggregate amount of $50 awards to Minimum Award Class Members shall be set aside from the Fund, with the remainder becoming the "Reduced Net Settlement Fund." Ex. A (Settlement Agreement) § 3.4(B)(c).

34. The Claims Administrator will then add all points for Class Members who are not Minimum Award Class Members ("Non-Minimum Award Class Members") to obtain the "Revised Total Denominator." Ex. A (Settlement Agreement) § 3.4(B)(d).

35. The Claims Administrator will then divide the number of points for each Non-Minimum Award Class Member by the Revised Total Denominator to obtain each Non-Minimum Award Class Member's "Revised Portion of the Net Settlement Fund." Ex. A (Settlement Agreement) § 3.4(B)(e).

36. The Claims Administrator will then multiply each Non-Minimum Award Class Member's Revised Portion of the Reduced Net Settlement Fund by the Reduced Net Settlement Fund to determine each Non-Minimum Award Class Member's "Actual Settlement Award." Ex. A (Settlement Agreement) § 3.4(B)(f).

37. If a Class Member does not sign and cash a settlement check within 90 days after receiving it, the settlement check shall be returned to Defendant within 90 days of the end of that 90-day period. Ex. A (Settlement Agreement) § 3.1(C).

38. Defendant reserves the right to revoke the Settlement Agreement if more than 5% of the Rule 23 Class Members timely and properly opt out pursuant to the terms of the Settlement Agreement. Ex. A (Settlement Agreement) § 2.6.

39. The individual settlement payments include sums for wages, interest and liquidated damages. The parties agree that fifty percent (50%) of all payments to claimants will be treated as back wages. Ex. A (Settlement Agreement) § 3.5(A). The remaining fifty percent (50%) will be deemed to constitute interest, liquidated damages, and other non-wage payments. Ex. A (Settlement Agreement) § 3.5(A). The employee portion of all payroll taxes and withholdings on this portion of the payments will be the responsibility of the individual class member receiving a settlement payment. Ex. A (Settlement Agreement) § 3.5(D). Defendant will pay the employer's portion of all such payroll taxes and withholdings. Ex. A (Settlement Agreement) § 3.1(A).

40. Class Members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions) of approximately $1,339.

41. This settlement provides much more than "a fraction of the potential recovery." By our estimation, the $3,000,000 settlement represents approximately 27% of the class's lost wages, assuming that Class Members worked overtime in 85% of total workweeks, and worked an average of 10 overtime hours per week, if Defendant were to prevail on the fluctuating workweek argument.

**Claims Administration**

42. The parties jointly selected Rust Consulting, Inc., an experienced wage and hour claims administrator, to administer the settlement. Ex. A (Settlement Agreement) § 1.31.

43. There are approximately 1,380 Class Members who will be eligible to participate in the settlement, of which approximately hundreds are Rule 23 Class Members.

44. Plaintiffs Mills, Jones, Martin, Scott-Selgado, Smith, Salazar, Sandoval-Wang, and Alonge have reacted positively to the settlement, which is also evidenced by their signatures on the Settlement.

45. Attached as **Exhibit B** is a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Rule 23 Notice").

46. Attached as **Exhibit C** is a Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 29th day of July, 2014
New York, New York.

    _/s/ Justin M. Swartz_____
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000