# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA MILLS, RHONDA JONES, LAUREL MARTIN, WILLIAM SCOTT-SELGADO, KRISTEN SMITH, BRAD SALAZAR, VERONICA SANDOVAL-WANG, and JEAN ALONGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>-against-<br><br>CAPITAL ONE, N.A.,<br><br>Defendant. | No. 14 Civ. 1937 (SHS) (HP)<br><br><br>**JOINT STIPULATION OF SETTLEMENT AND RELEASE** |

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang, and Jean Alonge (collectively the "Named Plaintiffs"), individually and on behalf of the classes of individuals that they seek to represent ("Class Members"), as well as Opt-in Plaintiffs Howard Jones, Teresa Lartey, and Rocio Rueda, and Capital One, N.A. ("Capital One" or "Defendant") (together with Plaintiffs, the "Parties").

### RECITALS

WHEREAS, on March 19, 2014, Named Plaintiffs filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, No. 14 Civ. 1937 (SHS) (HP), captioned *Mills, et. al. v. Capital One, N.A., et al.*, on behalf of current and former Assistant Branch Managers ("ABMs") employed by Capital One, in which they claimed that Defendant owes them overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), and also asserted Rule 23 class claims against Defendant under the wage and hour laws of New York; New Jersey; and Maryland for the alleged failure to pay them overtime compensation (the "Litigation");

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as hereinafter defined) between Plaintiffs and Defendant, including all claims asserted in the Litigation; and

WHEREAS, Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and

conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation; and

WHEREAS, on March 7, 2014, the Parties participated in a mediation session of this matter in New York, New York, which was conducted by experienced mediator Michael Dickstein, and after extensive negotiations, reached an accord resulting in this Agreement; and

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendant agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continuing the Litigation; and

WHEREAS, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to Defendant's compensation policies, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, and that there was a risk of future decertification if certification was granted, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Agreement**.  "Agreement" means this Joint Stipulation of Settlement and Release and all exhibits.

1.2    **Acceptance Period**.  "Acceptance Period" means the 90 days that a Class Member has to sign and cash a Settlement Check.  If the end of the Acceptance Period falls on a Sunday or holiday, the deadline to sign and cash a Settlement Check will be the next business day that is not a Sunday or holiday.

1.3    **Assistant Branch Managers, ABMs**.  "Assistant Branch Managers" and "ABMs" refers to all individuals who held the Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, and Assistant Branch Sales Manager job titles who worked at Capital One's branch locations.

1.4    **Class Counsel**.  "Class Counsel" or "Plaintiffs' Counsel" means Outten & Golden LLP; and Shavitz Law Group, P.A**.**

**1.5**     **Class Members**.  "Class Members" are the FLSA Class Members and the Rule 23 Class Members.  The total number of Class Members shall not exceed those for whom data was disclosed to Plaintiffs' Counsel on March 6, 2014, plus Class Members through the earlier of the date on which preliminary approval is granted or July 7, 2014, plus up to 2% additional Class Members beyond the total Class Members previously disclosed and added through July 7, 2014.

**1.6**     **Court**.  "Court" means the United States District Court for the Southern District of New York.

**1.7**     **Days**.  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

**1.8**     **Defendant**.  "Defendant" means Capital One, N.A.

**1.9**     **Defendant's Counsel**.  "Defendant's Counsel" means Thomas A. Linthorst and Sam S. Shaulson of Morgan Lewis & Bockius LLP.  For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Thomas A. Linthorst**.**

**1.10**   **Effective Date**.  The "Effective Date" is the date on which this Agreement becomes effective, which shall mean  fourteen (14) days following the last date the Final Approval Order entered by the Court finally approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed.  If an appeal is taken, then the Effective Date shall be fourteen (14) days after:  (i) the date of final affirmance of an appeal of the Final Approval Order, or the expiration of the time for a petition for a writ of certiorari to review the Final Approval Order and, if certiorari be granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on certiorari to review the Final Approval Order.

**1.11**   **Employer Payroll Taxes**.  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of wages in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.12**   **Fairness Hearing**.  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.13**   **Final Approval Order**.  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing in the form attached hereto as Exhibit A, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, dismissing the Litigation with prejudice, and entering Judgment pursuant to this Stipulation and in accordance with Fed. R. Civ. P. 58.

**1.14**   **FLSA Class Members**.  "FLSA Class Members" means any and all current and former ABMs employed by Defendant during the period from March 7, 2011, through and including the earlier of the date on which preliminary approval is granted or July 7, 2014.

1.15 **Gross Settlement Amount**. "Gross Settlement Amount" means up to Three Million Dollars ($3,000,000.00), which Defendant has agreed to pay to the Settlement Claims Administrator to settle the Litigation as set forth in this Agreement.

1.16 **Litigation**. "Litigation," as set forth in the Introduction, means the litigation initiated by the Complaint alleging violations of the FLSA and the wage and hours laws of New York, New Jersey, and Maryland captioned: *Mills, et. al. v. Capital One, N.A., et al.*, No. 14 Civ. 1937 (SHS) (HP).

1.17 **Named Plaintiffs**. "Named Plaintiffs," as set forth in the Introduction, means Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang, and Jean Alonge.

1.18 **Net Settlement Fund**. "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) all settlement administration fees, costs, and expenses, including but not limited to the Settlement Claim Administrator's fees and costs and costs of all notices; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named and Opt-in Plaintiffs as specified herein; and (4) a $75,000.00 reserve fund as described in Section 3.1(E).

1.19 **Notice or Notices**. "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, in the form attached as Exhibit B, and the Court-approved Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing, in the form attached as Exhibit C.

1.20 **Objector**. "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.21 **Opt-in Plaintiffs**. "Opt-in Plaintiffs" means those individuals who filed consent-to-join forms in the Litigation and those individuals who opt into the Litigation by negotiating their Settlement Checks before the end of the ninety (90) day Acceptance Period.

1.22 **Opt-out Statement**. "Opt-out Statement" is a written signed statement that an individual Rule 23 Class Member has decided to opt-out and not be included in this Agreement.

1.23 **Parties**. "Parties," as set forth in the Introduction, shall mean, collectively, Named Plaintiffs and Defendant.

1.24 **Plaintiffs**. "Plaintiffs" shall mean Named Plaintiffs.

1.25 **Preliminary Approval Order**. "Preliminary Approval Order" means the Order entered by the Court in the form attached as Exhibit D, preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.26 **Qualified Settlement Fund or QSF**. "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Claims Administrator

subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Settlement Amount.

1.27  **Rule 23 Class Members; State Sub-Classes**.  "Rule 23 Class Members" are individuals who were employed as ABMs by Defendant who fit within the definitions set forth in subparagraphs (A) through (C) below (the "State Sub-Classes").

(A)  **New York Class Members**.  "New York Class Members" means all individuals who were employed as ABMs by Defendant in the State of New York from March 7, 2008 through the earlier of the date on which preliminary approval is granted or July 7, 2014.

(B)  **New Jersey Class Members**.  "New Jersey Class Members" means all individuals who were employed as ABMs by Defendant in the State of New Jersey from March 7, 2012 through the earlier of the date on which preliminary approval is granted or July 7, 2014.

(C)  **Maryland Class Members**.  "Maryland Class Members" means all individuals who were employed as ABMs by Defendant in the State of Maryland from March 7, 2011 through the earlier of the date on which preliminary approval is granted or July 7, 2014.

1.28  **Released Federal Law Claims**.  "Released Federal Law Claims" shall collectively mean any and all federal law wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by an FLSA Class Action Member that accrued on any date up through the date of Preliminary Approval Order or July 7, 2014, whichever is earlier, for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

1.29  **Released State Law Claims**.  "Released State Law Claims" shall collectively mean any and all wage and hour claims against Releasees under New York law, New Jersey law, Maryland law, and other state and local law that accrued or accrue on any date up through the date of the Preliminary Approval Order, or July 7, 2014, whichever is earlier, whether known or unknown, of whatever kind and nature, character and description, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or

derivative claims under the Employee Retirement Income Security Act ("ERISA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law

1.30 **Releasees**.  "Releasees" means Capital One, N.A., Capital One Financial Corporation, and their present and former affiliates, divisions, subsidiaries, parents, predecessors and their affiliated and related entities, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.31 **Settlement Claims Administrator**.  The "Settlement Claims Administrator" will be Rust Consulting, Inc.  The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; calculating Class Members' settlement allocation; reporting on the state of the Settlement to the Parties; establishing and administering the QSF; distributing settlement payments; calculating and withholding Class Members' share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare and any state or local employment taxes); remitting such withheld funds to the appropriate taxing authorities and providing any related tax reporting; preparing and filing all tax returns necessary for the Settlement and the QSF; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein, including, without limitation, such duties as are specifically set forth in Section 3 hereof.  All settlement administration amounts, including but not limited to the Settlement Claims Administrator's fees and costs, shall be paid from the Gross Settlement Amount in the QSF.  If the Settlement is not given final approval by the Court and does not become Effective, the Parties shall bear settlement administration fees and costs equally.

1.32 **Settlement Checks**.  "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

1.33 **Settlement Notice**.  "Settlement Notice" means the notice sent to Class Members with the Settlement Checks, and shall be in the form attached as Exhibit E**.**

## 2.     APPROVAL AND CLASS NOTICE

2.1 **Binding Agreement**.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2 **Retention of the Settlement Claims Administrator**.  The Settlement Claims Administrator will be responsible for the services defined in Section 1.31.

(A)     The Settlement Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to Class Members, a summary

of the individuals who have negotiated the settlement checks or requested to opt-out or submitted objections, the claims administration process, distribution of the Settlement Checks, and other matters relating to the Settlement.  Within ten (10) days of the close of the Acceptance Period, the Settlement Claims Administrator shall prepare a final list of all Class Members who timely negotiated their Settlement Check, together with copies of the front and backside of the Settlement Check (reflecting the Consent to Join), and provide such information and documents to counsel for Plaintiffs and Defendant.  Plaintiffs and counsel for Plaintiffs shall use such information for purposes of this case only, and shall not disclose such information to other persons or entities except as expressly provided herein or as required by law.  The Settlement Claims Administrator will update and supplement this information as necessary.  The Parties will cooperate to ensure that appropriate consents are filed with the Court for all Opt-In Plaintiffs and that all personal and banking information shall be redacted before filing.

(B)     The Settlement Claims Administrator will promptly provide an IRS Form W-9 to Defendant following its engagement by the Parties.  Defendant agrees to cooperate with the Settlement Claims Administrator, provide accurate information necessary to calculate the amounts of the Settlement Checks, provide reasonably available data to assist the Settlement Claims Administrator in locating Class Members, including social security numbers if requested, and provide other reasonably available information related to the administration of the Settlement.

## 2.3     Preliminary Approval Motion.

(A)     Plaintiffs will file the Preliminary Approval Motion.  The Preliminary Approval Motion will be provided to Defendant for review and approval at least seven (7) days prior to filing with the Court, and Plaintiffs will consider and discuss Defendant's reasonable comments.  In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court this Stipulation with all exhibits, including the proposed Preliminary Approval Order.

(B)     The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement, or provide objections to this Agreement, and for a Fairness Hearing for Final Approval of the Settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named and Opt-In Plaintiffs as more fully set forth herein.  Provided that the terms of this Stipulation are adhered to, and Defendant's reasonable changes are incorporated, Defendant will not oppose the Preliminary Approval Motion.

(D)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final Judgment and dismissal.

**2.4    Notice to Class Members.**

(A)     Within five (5) days of the Court's issuance of a Preliminary Approval Order, but in no event prior to August 6, 2014, Defendant will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information:  name, last known addresses, social security numbers, dates of employment, job titles with dates, and workweeks within the applicable liability periods set forth in paragraphs 1.14, and 1.27 (A), (B), and (C) above as that information exists on file with Defendant ("Class List").  The Class List and the data and information contained in the Class List shall not be disclosed to Class Counsel, the Plaintiffs, or anyone else external to the Settlement Claims Administrator without the written consent of Defendant.  Prior to the provision of the Class List, the Settlement Claims Administrator shall execute an agreement, in a form acceptable to Defendant, not to use or disclose the information from the Class List except as is necessary to perform the services required of the Settlement Claims Administrator under this Stipulation.

(B)     Within ten (10) days of the receipt of the Class List, or as soon thereafter as practicable, the Settlement Claims Administrator will mail to all Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(C)     Within ten (10) days of the receipt of the Class List, or as soon thereafter as practicable, the Settlement Claims Administrator will mail to all FLSA Class Members who are not also Rule 23 Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notice of Settlement of Collective Action Lawsuit and Fairness Hearing.

(D)     The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5    Rule 23 Class Member Opt-outs.**

(A)     Rule 23 Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address,

and telephone numbers and states, "I opt out of the Capital One wage and hour settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order ("Opt-Out Period").  For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed that the document was mailed five (5) days prior the Settlement Claims Administrator's receipt of the document, excluding any Sunday or other day for which no postal service was provided.  It is the responsibility of the individual seeking to opt-out to retain a copy of the Opt-out Statement and proof of timely mailing hereunder.

(B)     Rule 23 Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second mailing but no later than sixty (60) days from the Preliminary Approval Order.  The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than thirty (30) days after the first mailing to Class Members.

(C)     The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendant's Counsel not later than three (3) days after receipt thereof.  Class Counsel will promptly file with the Clerk of Court stamped copies of any Opt-out Statements.  The Settlement Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendant's Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Rule 23 Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the Settlement and the terms of this Agreement and will be issued a Settlement Check, which will contain a release of the Released State Law Claims and the Released FLSA Claims, and a consent-to-join the Litigation, as set forth in this Agreement.  Any Rule 23 Class Member who does not properly submit an Opt-out Statement shall be bound by this Settlement and deemed to have released the Released State Law Claims regardless of whether he or she negotiates the Settlement Check.  Any Rule 23 Class Member who negotiates a Settlement Check shall be bound by the Settlement and deemed to have released the Released State Law Claims and the

Released FLSA Claims regardless of whether such individual also submitted an Opt-out Statement.

(F)     Named Plaintiffs and those receiving a Service Award shall not opt-out of the Settlement, and their execution of this Stipulation shall signal their agreement to all of the terms of the Settlement.

**2.6     Ability to Revoke**.  Defendant has the right to revoke this Agreement if more than 5% of the Rule 23 Class Members timely and properly opt-out under Sections 2.5(A) and (B), by delivering written notice to Class Counsel of its intent to revoke within ten (10) business days after the end of the Opt-out Period.

**2.7     Objections to Settlement.**

(A)     Rule 23 Class Members who do not opt-out and who wish to object to the proposed settlement must do so in writing.  To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain thirty (30) days from the mailing of the Notice to the Rule 23 Class Member and no later than sixty (60) days from the Preliminary Approval Order.  The written objection must include the words, "I object to the settlement in the Capital One overtime case" as well as all reasons for the objection.  Any reasons not included in the written objection will not be considered.  The written objection must also include the name, job title, address, and telephone numbers for the Rule 23 Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery no later than three (3) days after receipt thereof.  Class Counsel will promptly file the date-stamped originals of any and all objections with the Court.  It is the responsibility of any Rule 23 Class Member who files an objection (an "Objector") to retain a copy of the objection and proof of timely mailing hereunder.

(B)     A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in his or her written objection.  An Objector may withdraw his or her objections at any time.  No Rule 23 Class Member may appear at the Fairness Hearing unless he or she has submitted a timely objection that complies with all procedures provided in this Section and the previous Section.  No Rule 23 Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Rule 23 Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8     Challenges to Allocation.**

(A)     The Notices sent to Rule 23 Class Members and FLSA Class Members shall advise them of the dates of employment as an ABM during the relevant limitations period and number of workweeks as an ABM allocated to them, as well as the estimated amount of their settlement payment, and provide directions on how to challenge that allocation.

(B)     To be effective, any challenge to the allocation must be postmarked within thirty (30) days from the mailing of the Notice to the Class Member and no later than sixty (60) days from the Preliminary Approval Order

(C)     The Settlement Claims Administrator shall promptly advise the Parties of any challenge to the allocation by a Class Member, which challenge shall be resolved as provided in Section 3.1(E).

**2.9     Motion for Judgment and Final Approval**.  Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.  The Motion for Judgment and Final Approval will be provided to Defendant for review and approval at least seven (7) days prior to filing with the Court, and Plaintiffs will consider and discuss Defendant's reasonable comments.

**2.10    Entry of Judgment**.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the State Sub-Classes for purposes of settlement only, (b) enter Judgment in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Rule 23 Class Members who have not timely opted out pursuant to Section 2.5, (d) approve the FLSA settlement, and (e) dismiss the Litigation with prejudice.

**2.11    Effect of Revocation or Failure to Grant Preliminary or Final Approval**.  In the event the Court fails to enter Judgment in accordance with this Agreement, or such Judgment does not become Final as defined herein, or the Agreement does not become Effective, or Defendant revokes the Settlement pursuant to Section 2.6, (i) this Agreement shall have no force or effect, other than this Section 2.11, the non-disclosure provisions in Section 5.14, and the non-admission provisions in Section 4.3; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the class, if any, shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiffs' claims or any other issue; and (v) the

Litigation will proceed as if no settlement had been attempted unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event this Agreement does not become Final and the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing and Notice of Proposed Collective Action Lawsuit and Fairness Hearing already have been sent to the Class Members, the Settlement Claims Administrator will provide notice to the Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement, in a form jointly agreed upon by the Parties.  Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing and Notice of Proposed Collective Action Lawsuit and Fairness Hearing. The costs of such mailing shall be split equally between Plaintiffs and Defendant.

**2.12    Releases and Consents to Join.**

(A)    A Rule 23 Class Member who does not timely return an Opt-out Statement and all FLSA Class Members (except those FLSA Class Members who are also a Rule 23 Class Member and have returned an Opt-out Statement) will be issued a Settlement Check, together with a Settlement Notice in the form attached as Exhibit E, by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)    All Settlement Checks shall contain on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join in the case entitled *Mills, et. al. v. Capital One, N.A., et al.*, No. 14 Civ. 1937 (SHS) (HP), now pending in the United States District Court for the Southern District of New York, and agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case, and irrevocably and unconditionally waive, release, extinguish, acquit, and forever discharge the Released Federal Claims and Released State Law Claims as defined in the Notice I received with this check.

_____
Signature

(C)    The Settlement Claims Administrator shall instruct the bank from which the payments shall be made that a check shall be void if any of the language set forth in 2.12(B) has been crossed out, excised, deleted, or amended.  Any Release, Consent, and Settlement Check that is negotiated, however, shall signify the consent of such Class Member to join the case and to the releases in the Released Federal Claims and Released State Law Claims as a matter of law, regardless of

whether the check is signed or the language set forth in 2.12(B) has been crossed out, excised, deleted, or amended.

(D)     The Settlement Checks and Settlement Notices will be mailed to Class Members and attorneys' fees and costs checks wired to Class Counsel by the Settlement Claims Administrator within thirty (30) days after the Effective Date.

(E)     Defendant and the Settlement Claims Administrator shall exchange such information as is necessary and reasonably available for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.5.

## 3.     SETTLEMENT TERMS

## 3.1    Settlement Amount.

(A)     Defendant agrees to pay a maximum gross total Settlement Amount of Three Million and No/100ths Dollars ($3,000,000.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs as more fully set forth herein, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes as described in Section 3.5(C)), interest, and the Settlement Claims Administrator's fees and costs.  Other than the employer payroll taxes described in Section 3.5(C), Defendant will not be required to pay more than the gross total of Three Million and No/100ths Dollars ($3,000,000.00) under the terms of this Agreement.

(B)     Provided it has timely received a Form W-9 from the Settlement Claims Administrator and any other tax forms or information needed, by no later than twenty (20) days after the Effective Date, Defendant shall deposit Three Million and No/100ths Dollars ($3,000,000.00) into the QSF.  Any interest accrued from the QSF shall immediately be added to and become part of the Settlement Amount.

(C)     Within ten (10) days of the payment by Defendant of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Settlement Checks.  Class Members will have 90 days from the date of mailing to cash their Settlement Checks (the "Acceptance Period").  Class Members will be informed of the date of the end of the Acceptance Period in the Notices.  The Settlement Claims Administrator shall notify the Parties in writing of the date Notices will be sent at least two business days before transmission.  Settlement Checks not cashed within 90 days will be void and a stop-payment directive shall be placed by the Settlement Claims Administrator with the applicable bank.  However, Class Members who within 60 days of the expiration date demonstrate to the Settlement Claims Administrator good cause for not timely cashing their check shall be issued a replacement check.  Within 90 days of the end of the Acceptance Period,

the amounts of uncashed checks shall be returned to Defendant. This Stipulation and the associated Judgment do not and will not create any unpaid residue or unpaid residual with respect to the amounts of uncashed checks, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Stipulation.

(D)     The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. §1.468B-1, 26 CFR § 1.468B-1, et seq., and will be administered by the Settlement Claims Administrator as such. With respect to the QSF, the Settlement Claims Administrator shall: (1) calculate, withhold, remit and report each Class Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendant for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (3) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the QSF; and (4) satisfy out of the QSF all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Stipulation. The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the QSF. The Parties and the Settlement Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Settlement Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. The parties will require the Settlement Claims Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF.

(E)     The Settlement Claims Administrator shall set aside $75,000.00 of the QSF as a Reserve Fund. The Settlement Claims Administrator shall promptly advise counsel for the Parties of any Class Members who file late or deficient claims, who dispute their allocation based on the settlement formula, or other individuals who have come forward as individuals who were not identified as Class Members but who have a good-faith claim for participation. Defendant shall decide, after a good faith conference with Class Counsel, whether such individuals may participate in the Settlement. If accepted, such individuals shall be considered Opt-In Plaintiffs for all purposes under this Agreement. The Parties will confer in good faith in an effort to resolve any dispute relating to a Class Member's weeks worked as a Class Member and allocation and, if the Parties are unable to reach an agreement, the Settlement Claims Administrator shall decide the dispute, and its decision will be final. It will be presumed that Capital One's records are accurate unless the Class Member provides conclusive documentary evidence otherwise.

Any individual who is accepted as a Class Members or whose allocation is permitted to be increased in accordance with this Section fourteen (14) days prior to the distribution of the Settlement Checks shall be paid from the Net Settlement Fund and the calculations for all other Class Members adjusted as necessary in accordance with Section 3.4. Any individual who is accepted as a Class Member or whose allocation is permitted to be increased in accordance with this Section after the date that is fourteen (14) days prior to the distribution of the Settlement Checks, or any amount needed to satisfy any claim for relief allowed pursuant to Fed. R. Civ. P. 60(b)(1) or 60(d), shall be paid from the Reserve Fund. Once settlement funds (the Net Settlement Fund and Reserve Fund) no longer remain to accept additional claims or adjust allocations, no further claims shall be accepted, or changes to allocations made. In no event shall the acceptance of any individuals as Class Members or changes to allocations in accordance with this Section result in Defendant being required to pay more than the Gross Settlement Amount of $3 million. Any amount remaining in the Reserve Fund 180 days after the end of the Acceptance Period will be returned to Defendant.

(F)   All payments to Opt-In Plaintiffs made pursuant to this Agreement shall be deemed to be paid to such Opt-In Plaintiff solely in the year in which such payments actually are received by the Opt-In Plaintiff. It is expressly understood and agreed that any amount paid to any Opt-In Plaintiff shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Capital One Benefit Plans") provided by Defendant or any Releasee, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Capital One Benefit Plans, and are not considered eligible compensation for Capital One Benefit Plans, or for Capital One's 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any Capital One Benefit Plan, or otherwise modify benefits, contributions or coverage under any Capital One Benefit Plan.

## 3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.

(A)   At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third of the Gross Settlement Amount, and, in addition, for reimbursement of their actual litigation costs and expenses not to exceed $20,000 to be paid from the QSF. Defendant will not oppose this application. After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendant shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)   The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness,

reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs.  Upon the determination of any such appeal, fees and costs sought by Class Counsel but not awarded shall be returned to Defendant.

(C)     Within ten (10) days of the payment by Defendant of the Settlement Amount into the QSF, the Settlement Claims Administrator shall wire the Court-approved attorneys' fees to Class Counsel.

**3.3     Service Awards to Certain Plaintiffs.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang, and Jean Alonge will each apply to the Court for $6,000.00 as a Service Award from the QSF.  Opt-in Plaintiffs Howard Jones, Teresa Lartey, and Rocio Rueda ("Service Award Plaintiffs") will also each apply to the to the Court for $3,000.00 as a Service Award from the QSF.  Defendant will not oppose such applications by the Named Plaintiffs and Service Award Plaintiffs.

(B)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  The amount of Service Awards sought but not awarded shall be returned to Defendant.

(C)     Within ten (10) days of the payment by Defendant of the Settlement Amount into the QSF, the Settlement Claims Administrator shall mail the Court-approved Service Awards to the applicable individuals.

**3.4     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)     A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula:

(1)     Each New York Class Member who is not subject to a release of state law overtime claims executed prior to this Settlement Agreement shall be assigned three points for each week worked as an ABM in New York between March 7, 2008 and July 7, 2014.  Each New York Class Member

who is subject to a release of state law overtime claims executed prior to this Settlement Agreement shall be assigned one point for each week worked as an ABM in New York between March 7, 2008 and July 7, 2014.

(2)    Each New Jersey, Maryland, and FLSA Class Member who is not subject to a release of state law overtime claims executed prior to this Settlement Agreement shall be assigned three points for each week worked as an ABM in any state other than New York between March 7, 2011 and July 7, 2014. Each New Jersey, Maryland, and FLSA Class Member who is subject to a release of state law overtime executed prior to this Settlement Agreement claims shall be assigned one point for each week worked as an ABM in any state other than New York between March 7, 2011 and July 7, 2014.

(3)    A Class Member who is not subject to a release of claims executed prior to this Settlement Agreement may only receive three points for any particular week.  A Class Member who is subject to a release of claims executed prior to this Settlement Agreement may only receive one point for any particular week.

(4)    To calculate each Class Member's proportionate share:

(a)    Add all points for Class Members together to obtain the "Total Denominator";

(b)    Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Fund."

(c)    Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Notional Settlement Award."  If the Class Member's Notional Settlement Award is equal to or less than $50 (a "Minimum Award Class Member"), he or she will be offered $50, and the aggregate amount of $50 awards to Minimum Award Class Members shall be set aside from the Net Settlement Amount, with the remainder being the Reduced Net Settlement Amount.

(d)    Add all points for Class Members who are not Minimum Award Class Members ("Non-Minimum Award Class Members") to obtain the "Revised Total Denominator";

(e)    Divide the number of points for each Non-Minimum Award Class Member by the Revised Total Denominator to obtain each Non-Minimum Award Class Member's "Revised Portion of the Net Settlement Fund."

(f)     Multiply each Non-Minimum Award Class Member's Portion of the Reduced Net Settlement Fund by the Reduced Net Settlement Fund to determine each Non-Minimum Award Class Member's "Actual Settlement Award."

**3.5     Tax Characterization.**

(A)     For tax purposes, 50% of payments to Class Members pursuant to Section 3.4 shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.  To the extent any settlement payment results in any overpayment of unemployment benefits to any Plaintiff and/or Opt-In Plaintiff, the amount of any such overpayment shall be the responsibility of the individual Plaintiff and/or Opt-In Plaintiff, unless prohibited by law.

(B)     Payments treated as back wages pursuant to Section 3.5(A), or Service Awards pursuant to Section 3.3, shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     Defendant shall cooperate with the Settlement Claims Administrator to timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to Section 3.4 and shall promptly pay such amounts to the QSF.  The Settlement Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Opt-In Plaintiffs required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Defendant as required by applicable law.

(D)     The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a Settlement Check or Service Award.  As to the payments reported as non-wage income, the Named Plaintiffs and Opt-In Plaintiffs shall each agree to indemnify and hold harmless Defendant for any taxes, penalties, interest or other amounts due or owing by that individual Named Plaintiff or Opt-In Plaintiff on such payments.  Other than as set forth above, Defendant will not make from the payment to each Named Plaintiff and Opt-In Plaintiff any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions,

wage garnishments, or charity withholdings, and entry of the Final Approval Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.  Any amount paid to Named Plaintiffs and Opt-In Plaintiffs shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by Defendants.  Plaintiffs, on behalf of the Class Members and the Opt-In Plaintiffs, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

(E)     The Settlement Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

## 4.    RELEASE

### 4.1    Release of Claims.

By operation of the entry of the Final Approval Order and Judgment, and except as to such rights or claims as may be created by this Agreement,

(A)     Each individual Rule 23 Class Member who does not timely and validly opt-out pursuant to this Agreement forever and fully releases the Released State Law Claims.

(B)     In addition, each individual Class Member who negotiates the Settlement Check shall forever and fully release both the Released State Law Claims and the Released Federal Law Claims.

(C)     In addition to the Released State Law Claims and Released Federal Law Claims, all Named Plaintiffs and Service Award Plaintiffs forever and fully release Defendant and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Defendant or Releasees the Named Plaintiffs and Service Award Plaintiffs, and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that they have or had upon, or by reason of, any cause or thing whatsoever, including, but not limited to relating to their employment or termination of employment, including, but not limited to, claims arising under the Age Discrimination in Employment Act ("ADEA"), Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil

Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act,  and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendant or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world up to and including the date that the applicable Named Plaintiff or Service Award Plaintiff executed this General Release; provided, however, that Named Plaintiffs and Service Award Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Named Plaintiffs and Service Award Plaintiffs do not release any claim for breach of the terms of the Agreement.

(1)     This Settlement is intended to include in its effect all claims identified in this Section, including claims that each Named Plaintiff and Service Award Plaintiff does not know or suspect to exist in his or her favor against Defendant or Releasees at the time of the release.  Named Plaintiffs and Service Award Plaintiffs shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section 4.1(C).

(2)     Any Named Plaintiff or Service Award Plaintiff who is age 40 or over at the time he or she is presented with this Agreement shall have twenty-one (21) calendar days to consider the Agreement, and seven (7) days to revoke their entitlement to a Service Award and the general release of claims in this Section 4.1(C) following his or her execution of the Agreement, and such provisions shall not be effective or enforceable as to such Named Plaintiff or Service Award Plaintiff until the expiration of this seven-day revocation period.  Any revocation by any Named Plaintiff or Service Award Plaintiff who is age 40 or over at the time he or she is presented with this Agreement of his or her entitlement to a Service Award and the general release of claims in this Section 4.1(C) shall pertain solely to the payment of his or her Service Award and the general release set forth in this Section 4.1(C).  Upon such revocation, such Named Plaintiff or Service Award Plaintiff shall not be paid any Service Award, and shall not release claims under this Section 4.1(C), but this Agreement shall otherwise remain valid and enforceable in all other respects, and such Named Plaintiff or Service Award Plaintiff shall

continue to be considered a Class Member for purposes of participating in the Settlement and releasing the Released State Law Claims and the Released Federal Law Claims.  Further, Named Plaintiffs and Service Award Plaintiffs are hereby advised to consult with an attorney of their choosing before executing this Agreement, and represent that they have done so with Class Counsel.  If any Service Award Plaintiff fails to execute this Agreement or revokes this Agreement, he or she shall not be considered a Service Award Plaintiff and shall not receive the Service Award, but this Agreement shall  otherwise be fully binding and effective.

(3)     Nothing in this Release shall prohibit or restrict Named Plaintiffs and Service Award Plaintiffs from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency or self regulatory organization ("SRO"); (ii) complying with a lawful subpoena or other legal process, subject to the terms of the Agreement; or (iii) engaging in any conduct that is required or protected by law.

(4)     Named Plaintiffs and Service Award Plaintiffs further covenant that they will not participate in any other legal actions against Defendant relating to claims released by this Stipulation, and will not opt-in, will withdraw any opt-in, and will opt-out of those actions if they become aware of such actions.

(D)     Named Plaintiffs and Service Award Plaintiffs who are not currently employed by Defendant certify that they have returned all property of Defendant or Releasees in their possession or control, including without limitation, equipment, telephones, credit cards, keys, pagers, tangible proprietary information, documents, computers and computer discs, personal data assistants, files and data, which they prepared or obtained during the course of their employment.

(E)     Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendant for attorneys' fees or costs associated with Class Counsel's representation of the Named Plaintiffs and Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

**4.2     Effect of Failure to Cash a Settlement Check**.  Upon the entry of the Final Approval Order and Judgment, each Class Member who has not filed a valid and timely Opt-out Statement shall have released all applicable claims as defined in Sections 1.28, 1.29 and 4.1 of the Settlement Agreement, provided, however, that any Class Member who did not affirmatively opt into the FLSA class and who did not cash his or her Settlement Check shall not release the Released Federal Law Claims.

4.3     **Non-Admission of Liability**.  Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, and Defendant and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter.  Each of the Parties has entered into this Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.  This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate.  There has been no determination by any Court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class or collective should be certified, other than for settlement purposes only.  Furthermore, nothing in this Agreement shall be considered any form of waiver of any releases by Defendant or Releasees.

5.      **INTERPRETATION AND ENFORCEMENT**

5.1     **Responsive Pleading**.  The Parties agree that Defendant shall not be required to respond to the Complaint unless the Settlement should not be approved by the Court or should be revoked by Defendants, in which case the Parties will agree upon a deadline for Defendants to answer, move, or otherwise respond to the Complaint and shall submit such proposed deadline to the Court for approval.

5.2     **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.3     **Non-Interference With Settlement**.  Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order and Judgment, Plaintiffs and all Class Members and anyone acting on behalf of any Class Member shall be barred and enjoined from:  (a) further litigation in this Litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Defendant in any forum in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

5.4     **No Assignment**.  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.5 **Entire Agreement**.  This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

5.6 **Binding Effect**.  This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

5.7 **Arms' Length Transaction; Materiality of Terms**.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.8 **Captions**.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.9 **Construction**.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.10 **Governing Law**.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.11 **Continuing Jurisdiction**.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

5.12 **Waivers, etc. to Be in Writing**.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.13 **CAFA Notice**.  Defendant shall timely provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel.  A copy of the

CAFA Notices are attached as Exhibit F, and may be modified by Defendant as circumstances warrant.

5.14    **Non-Disclosure/Non-Disparagement.**  Plaintiffs agree prior to filing of the Motion for Preliminary Approval not to disclose to individuals other than immediate family, tax preparers, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law.  After the filing of the Motion for Preliminary Approval, neither Plaintiffs nor Class Counsel shall, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Stipulation or the Settlement, nor shall they issue any notice of the Settlement to Class Members (other than communications with the Named Plaintiffs, or in response to any inquiry by a Class Member) except for the Notices issued through the Settlement Claims Administrator as set forth in this Agreement.  Neither Plaintiffs nor Class Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement or the settlement negotiations on any website, or otherwise publicize the settlement or negotiations.  Plaintiffs and Class Counsel agree not to respond to any press inquiries concerning the settlement except to refer reporters to the papers filed with the District Court.  Plaintiffs further agree not to make disparaging comments relating to Defendant except as may be required or protected by law.  The parties agree and acknowledge that, except as provided in Section 4.3, nothing herein shall prevent Class Counsel from referring or citing to this lawsuit and the pleadings and other papers filed in obtaining approval of this Settlement in any court filings and proceedings in other cases for the purposes of demonstrating their experience and adequacy as class counsel.

5.15    **Counterparts**.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.16    **Signatures of Named Plaintiffs and Service Award Recipients**.  This Agreement is valid and binding if signed by Defendant's representative and the Named Plaintiffs.  Any Service Award Recipient's failure to sign the Agreement does not nullify the Agreement but that individual shall become ineligible to receive a Service Award.

5.17    **Facsimile and Scanned Signatures**.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED:  July 29, 2014

**CAPITAL ONE, N.A.:**

By: _____
Matthew W. Cooper

Its: __SVP, Chief Counsel_____

CLASS COUNSEL:

OUTTEN & GOLDEN LLP, , as attorneys for **Plaintiffs** and the Class with respect to terms applicable to Class Counsel

DATED: _____, 2014

By:    _____
Justin M. Swartz

Justin M. Swartz
Jennifer Liu
3 Park Avenue, 29th Floor
New York, NY 10016
Tel: (212)-245-1000
Fax: (646)-509-2057

DATED: July 29 , 2014

SHAVITZ LAW GROUP, P.A., as attorneys for Plaintiffs and the Class with respect to terms applicable to Class Counsel

By:    _____
Gregg I. Shavitz

Gregg I. Shavitz
Paolo Meireles
1515 S. Federal Highway, Suite 404
Boca Raton, Florida  33432
Phone: 561-447-8888

DATED: _____, 2014

**PATRICIA MILLS**

_____

DATED: _____, 2014

**RHONDA JONES**

_____

DATED: _____, 2014          **CAPITAL ONE, N.A.:**

                                 By: _____

                                 Its: _____

CLASS COUNSEL:                   OUTTEN & GOLDEN LLP, as attorneys for Plaintiffs
                                 and the Class with respect to terms applicable to Class
                                 Counsel

DATED: _____, 2014     By: _____
                                        Justin M. Swartz

                                 Justin M. Swartz
                                 Jennifer Liu
                                 3 Park Avenue, 29th Floor
                                 New York, NY 10016
                                 Tel: (212)-245-1000
                                 Fax: (646)-509-2057

DATED: _____, 2014     SHAVITZ LAW GROUP, P.A., as attorneys for Plaintiffs
                                 and the Class with respect to terms applicable to Class
                                 Counsel

                                 By: _____
                                        Gregg I. Shavitz

                                 Gregg I. Shavitz
                                 Paolo Meireles
                                 1515 S. Federal Highway, Suite 404
                                 Boca Raton, Florida  33432
                                 Phone: 561-447-8888

DATED: _____, 2014          **PATRICIA MILLS**

                                 _____

DATED: _____, 2014          **RHONDA JONES**

                                 _____

DATED: _____, 2014              **CAPITAL ONE, N.A.:**

                                 By: _____

                                 Its: _____

CLASS COUNSEL:                   OUTTEN & GOLDEN LLP, , as attorneys for Plaintiffs
                                 and the Class with respect to terms applicable to Class
                                 Counsel

DATED: _____, 2014     _____
                                 By:    Justin M. Swartz

                                 Justin M. Swartz
                                 Jennifer Liu
                                 3 Park Avenue, 29th Floor
                                 New York, NY 10016
                                 Tel: (212)-245-1000
                                 Fax: (646)-509-2057

DATED: _____, 2014     SHAVITZ LAW GROUP, P.A., as attorneys for Plaintiffs
                                 and the Class with respect to terms applicable to Class
                                 Counsel

                                 _____
                                 By:    Gregg I. Shavitz

                                 Gregg I. Shavitz
                                 Paolo Meireles
                                 1515 S. Federal Highway, Suite 404
                                 Boca Raton, Florida  33432
                                 Phone: 561-447-8888

DATED: 7-25, 2014                **PATRICIA MILLS**

                                 *Patricia Mills*
                                 _____

DATED: _____, 2014             **RHONDA JONES**

                                 _____

DATED: \_\_\_\_\_, 2014          **CAPITAL ONE, N.A.:**

By: _____

Its: _____

CLASS COUNSEL:          OUTTEN & GOLDEN LLP, , as attorneys for Plaintiffs and the Class with respect to terms applicable to Class Counsel

DATED: _____, 2014
                          By:   Justin M. Swartz
                          _____

                          Justin M. Swartz
                          Jennifer Liu
                          3 Park Avenue, 29th Floor
                          New York, NY 10016
                          Tel: (212)-245-1000
                          Fax: (646)-509-2057

DATED: _____, 2014   SHAVITZ LAW GROUP, P.A., as attorneys for Plaintiffs and the Class with respect to terms applicable to Class Counsel

                          By:   Gregg I. Shavitz
                          _____

                          Gregg I. Shavitz
                          Paolo Meireles
                          1515 S. Federal Highway, Suite 404
                          Boca Raton, Florida 33432
                          Phone: 561-447-8888

DATED: \_\_\_\_\_, 2014          **PATRICIA MILLS**

DATED: \_\_\_\_\_, 2014          **RHONDA JONES**

DATED: _____, 2014    **LAUREL MARTIN**

_____

DATED: _____, 2014    **WILLIAM SCOTT-SELGADO**

_____

DATED: _____, 2014    **KRISTEN SMITH**

_____

DATED: _____, 2014    **BRAD SALAZAR**

_____

DATED: _____, 2014    **VERONICA SANDOVAL-WANG**

_____

DATED: _____, 2014    **JEAN ALONGE**

_____

DATED: _____, 2014    **HOWARD JONES**

_____

DATED: _____, 2014    **TERESA LARTEY**

_____

DATED: _____, 2014    **ROCIO RUEDA**

_____

DATED: _____, 2014     **LAUREL MARTIN**

DATED: _25_, 2014     **WILLIAM SCOTT-SALGADO**

DATED: _____, 2014     **KRISTEN SMITH**

DATED: _____, 2014     **BRAD SALAZAR**

DATED: _____, 2014     **VERONICA SANDOVAL-WANG**

DATED: _____, 2014     **JEAN ALONGE**

DATED: _____, 2014     **HOWARD JONES**

DATED: _____, 2014     **TERESA LARTEY**

DATED: _____, 2014     **ROCIO RUEDA**

DHU/80056332.2                    - 26-

DATED: _____, 2014          **LAUREL MARTIN**

_____

DATED: _____, 2014          **WILLIAM SCOTT-SELGADO**

_____

DATED: 7/25, 2014          **KRISTEN SMITH**

_____

DATED: _____, 2014          **BRAD SALAZAR**

_____

DATED: _____, 2014          **VERONICA SANDOVAL-WANG**

_____

DATED: _____, 2014          **JEAN ALONGE**

_____

DATED: _____, 2014          **HOWARD JONES**

_____

DATED: _____, 2014          **TERESA LARTEY**

_____

DATED: _____, 2014          **ROCIO RUEDA**

_____

DB1/ 80056332.2          - 26-

DATED: \_\_\_\_\_, 2014     **LAUREL MARTIN**

_____

DATED: \_\_\_\_\_, 2014     **WILLIAM SCOTT-SELGADO**

_____

DATED: \_\_\_\_\_, 2014     **KRISTEN SMITH**

_____

DATED: _07/25_2014     **BRAD SALAZAR**

_____

DATED: \_\_\_\_\_, 2014     **VERONICA SANDOVAL/WANG**

_____

DATED: \_\_\_\_\_, 2014     **JEAN ALONGE**

_____

DATED: \_\_\_\_\_, 2014     **HOWARD JONES**

_____

DATED: \_\_\_\_\_, 2014     **TERESA LARTEY**

_____

DATED: \_\_\_\_\_, 2014     **ROCIO RUEDA**

_____

DATED: _____, 2014          **LAUREL MARTIN**

DATED: _____, 2014          **WILLIAM SCOTT-SELGADO**

DATED: _____, 2014          **KRISTEN SMITH**

DATED: _____, 2014          **BRAD SALAZAR**

DATED: 07/25, 2014          **VERONICA SANDOVAL-WANG**

DATED: _____, 2014          **JEAN ALONGE**

DATED: _____, 2014          **HOWARD JONES**

DATED: _____, 2014          **TERESA LARTEY**

DATED: _____, 2014          **ROCIO RUEDA**

DATED: _____, 2014      **LAUREL MARTIN**

_____

DATED: _____, 2014      **WILLIAM SCOTT-SELGADO**

_____

DATED: _____, 2014      **KRISTEN SMITH**

_____

DATED: _____, 2014      **BRAD SALAZAR**

_____

DATED: _____, 2014      **VERONICA SANDOVAL-WANG**

_____

DATED: _____, 2014      **JEAN ALONGE**

_____

DATED: 07/24, 2014      **HOWARD JONES**

_____

DATED: _____, 2014      **TERESA LARTEY**

_____

DATED: _____, 2014      **ROCIO RUEDA**

_____

DATED: _____, 2014          **LAUREL MARTIN**

DATED: _____, 2014          **WILLIAM SCOTT-SELGADO**

DATED: _____, 2014          **KRISTEN SMITH**

DATED: _____, 2014          **BRAD SALAZAR**

DATED: _____, 2014          **VERONICA SANDOVAL-WANG**

DATED: _____, 2014          **JEAN ALONGE**

DATED: 7-23 , 2014          **HOWARD JONES**

DATED: _____, 2014          **TERESA LARTEY**

DATED: _____, 2014          **ROCIO RUEDA**

DATED: _____, 2014          **LAUREL MARTIN**

_____

DATED: _____, 2014          **WILLIAM SCOTT-SELGADO**

_____

DATED: _____, 2014          **KRISTEN SMITH**

_____

DATED: _____, 2014          **BRAD SALAZAR**

_____

DATED: _____, 2014          **VERONICA SANDOVAL-WANG**

_____

DATED: _____, 2014          **JEAN ALONGE**

_____

DATED: _____, 2014          **HOWARD JONES**

_____

DATED: July 23, 2014          **TERESA LARTEY**

_____

DATED: _____, 2014          **ROCIO RUEDA**

_____

DATED: _____, 2014          **LAUREL MARTIN**

_____

DATED: _____, 2014          **WILLIAM SCOTT-SELGADO**

_____

DATED: _____, 2014          **KRISTEN SMITH**

_____

DATED: _____, 2014          **BRAD SALAZAR**

_____

DATED: _____, 2014          **VERONICA SANDOVAL-WANG**

_____

DATED: _____, 2014          **JEAN ALONGE**

_____

DATED: _____, 2014          **HOWARD JONES**

_____

DATED: _____, 2014          **TERESA LARTEY**

_____

DATED: _____, 2014          **ROCIO RUEDA**

_____

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PATRICIA MILLS, RHONDA JONES, LAUREL MARTIN, WILLIAM SCOTT-SELGADO, KRISTEN SMITH, BRAD SALAZAR, VERONICA SANDOVAL-WANG, and JEAN ALONGE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br>   -against-<br><br>CAPITAL ONE, N.A.,<br><br>                 Defendant. | **No. 14 Civ. 1937 (SHS) (HP)** |

**[PROPOSED] FINAL ORDER AND JUDGMENT GRANTING PLAINTIFFS' MOTION FOR CERTIFICATION OF SETTLEMENT CLASS, FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FLSA SETTLEMENT**

Plaintiffs Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang, and Jean Alonge (together, "Plaintiffs")  are individuals who worked as Assistant Branch Managers ("ABMs") for Defendant Capital One, N.A. ("Capital One" or "Defendant") at Defendant's branch locations in multiple states. Plaintiffs alleged that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York, New Jersey, and Maryland by improperly classifying them as exempt from federal and state overtime requirements and failing to pay them and other ABMs overtime wages.  Swartz Decl. ¶ XX.

Before the initiation of this action, Plaintiffs conducted a thorough investigation into the merits of the potential claims and defenses.  *Id.* ¶ XX.  Plaintiffs focused their investigation and legal research on the underlying merits of Class Members' claims, the damages to which they

were entitled, and the propriety of class certification.  *Id.*  Plaintiffs' Counsel conducted in-depth interviews with the eight Plaintiffs and three Opt-In Plaintiffs to determine the hours they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims.  *Id.* ¶ XX.  Plaintiffs also obtained and reviewed numerous documents from Plaintiffs related to their employment with Defendant, including pay records, incentive plans, handbooks, guides, training materials, emails, memos, calendars, and resumes. *Id.*  Plaintiffs conducted in-depth background research on Defendant, including reviewing corporate documents and SEC filings, to obtain information on Defendant's corporate structure and facilities.  *Id.* ¶ XX.  Plaintiffs also obtained numerous job postings for the ABM position from across numerous states to determine the nature of the duties and responsibilities of the position. *Id.*

On July 18, 2013, Plaintiffs sent Defendant a letter in which they summarized their clients' potential claims and invited Defendant to engage in pre-litigation settlement discussions. *Id.* ¶ XX.  In response to the letter, the parties agreed to discuss a possible resolution of Plaintiffs' claims.  *Id.* ¶ XX.  The parties also entered into a confidentiality agreement and agreed to exchange data to assess the claims and calculate damages.  *Id.* ¶ XX.  Prior to the parties' mediation, the parties engaged in correspondence and conference calls in which they vigorously debated their respective positions.  *Id.* ¶ XX.  Defendant produced personnel documents relating to several of the Named and Opt-In Plaintiffs that were relevant to both liability and damages issues.  *Id.* ¶ XX.  Plaintiffs obtained detailed declarations from seven of the Named and Opt-In Plaintiffs to help support their factual claims at the mediation.  *Id.* ¶ XX.

On March 7, 2014, the parties attended a full day mediation session in New York with Michael E. Dickstein, Esq., a well-known and experienced mediator in wage and hour law.  *Id.* ¶

XX.  At the mediation, the parties reached agreement on the settlement amount and several other key terms.  *Id.* ¶ XX.  During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Settlement Agreement executed by the parties on or about July XX, 2014.  *Id.* ¶ XX.

On March 19, 2014, after mediation but prior to reaching agreement on all material terms of the settlement, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the FLSA and the wage and hour laws of New York, New Jersey, and Maryland by improperly classifying ABMs as exempt from federal and state overtime requirements, and sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.  *Id.* ¶ XX.  The complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.  *Id.* ¶ XX.

On XX XX, 2014, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, appointing Outten & Golden LLP and Shavitz Law Group P.A. as Class Counsel, and authorizing notice to all Class Members.  ECF No. XX.

On XX XX, 2014, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement for Class Members in the three states where Rule 23 claims were brought, and of Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and their out-of-pocket expenses.  Swartz Decl., Ex. XX (XX Decl.) ¶ 11, Exs. A & B.

On XX XX, 2014, Plaintiffs filed a Motion for Certification of the Settlement Class,

Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval").  That same day, Plaintiffs also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards").  Defendant took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on XX XX, 2014.  No Class Member objected to the settlement at the hearing.

The Court, having considered the parties' Joint Stipulation of Settlement and Release ("Stipulation"), Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations and all other materials properly before the Court, and having conducted an inquiry pursuant to Section 216(b) of the Fair Labor Standards Act of 1938 and Rule 23 of the Federal Rules of Civil Procedure, hereby finds and orders as follows:

1.      Unless otherwise defined herein, all terms used in this Order (the "Final Order and Judgment") will have the same meaning as defined in the Stipulation.

2.      The Court has jurisdiction over the subject matter of this action, the Plaintiffs, the Rule 23 Class Members, the FLSA Class Members, and Capital One, N.A.

3.      The Court finds that the Settlement was the product of protracted, arms-length negotiations between experienced counsel.  The Court grants final approval of the Settlement, including the releases and other terms, as fair, reasonable and adequate as to the Plaintiffs, the Rule 23 Class Members and the FLSA Class Members.

4.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).   To

determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine whether a settlement is substantively fair, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

5.      Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits.  *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 2895918, at *4 (S.D.N.Y. June 20, 2014) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013).

6.      In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."  *Clem*, 2014 WL 2895918, at *5 (quoting *Yuzary*, 2013 WL 5492998, at *5); *see also Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *1 (S.D.N.Y. Mar. 21, 2013) (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011) (commending Plaintiffs' attorneys for negotiating early

settlement).   The parties here acted responsibly in reaching an early settlement.   *See In re Interpublic Secs. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

7.     "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery."   *Clem*, 2014 WL 2895918, at *4 (quoting *Wal-Mart Stores*, 396 F.3d at 116).   The Court gives weight to the parties' judgment that the settlement is fair and reasonable.   *See Torres v. Gristede's Operating Corp.*, Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv., Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010).

### *Procedural Fairness*

8.     The settlement is procedurally fair, reasonable, adequate, and not a product of collusion.   *See* Fed. R. Civ. P. 23(e); *Clem*, 2014 WL 2895918, at *4 (quoting *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator")); *Yuzary*, 2013 WL 5492998, at *5; *Diaz*, 2010 WL 5507912, at *4.   A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."   *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato*, 236 F.3d at 85.   Here, the settlement was reached after Class Counsel had

conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties.  Class Counsel interviewed Plaintiffs and approximately XX other Assistant Branch Managers ("ABMs"), obtained and reviewed documents from them, and obtained declarations from Plaintiffs and additional ABMs.  From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiffs' claims.

9.     To help resolve the case, the parties enlisted the services of experienced employment mediator Michael E. Dickstein.  (Swartz Decl. ¶ XX).  Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.  *See Wal-Mart Stores*, 396 F.3d at 116; *Clem*, 2014 WL 2895918, at *4; *Yuzary*, 2013 WL 5492998, at *5; *Torres*, 2010 WL 5507892, at *3-4; *Diaz*, 2010 WL 5507912, at *3-4; *McMahon*, 2010 WL 2399328, at *4.

### *Substantive Fairness*

10.    The settlement is substantively fair.  All of the factors set forth in *City of Detroit*, 495 F.2d at 463, which provide the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

11.    The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.

12.     Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* favor weighs in favor of final approval.

13.     The class's reaction to the settlement was positive.  The Notices sent to Class Members included an explanation of the allocation formula and an estimate of each class member's award.  The Rule 23 Notice also informed Class Members that they could object to or exclude themselves from the Settlement, and explained how to do so.  Swartz Decl. ¶ XX.

14.     The Court finds that there were ___ written objections to the Settlement.  The Court finds that these objections are without merit and are overruled.  __ Class Members requested exclusion from the Settlement.  This favorable response demonstrates that the class approves of the settlement, which further supports final approval.  *See Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 177 (W.D.N.Y. 2011) (granting final approval and noting "very little negative reaction by class members to the proposed settlement" where 11 out of 3,800 class members opted out, and 3 objected); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members objected and two requested exclusion); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).  Therefore, the second *Grinnell* factor weighs in favor of final approval.

15.     The parties have completed enough discovery to recommend settlement. "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of several months, Plaintiffs obtained informal discovery, including documentary evidence, declaration testimony, and data on Class Members' damages. Swartz Decl. ¶¶ XX-XX. The third *Grinnell* factor weighs in favor of final approval.

16.     The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litigation*, 80 F. Supp. 2d at 177 (internal quotation marks and citation omitted). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Capital One's exemption defenses, proving willfulness in order to obtain a third year of liability and damages, and overcoming Defendant's likely fluctuating workweek argument. The proposed settlement eliminates this uncertainty. The fourth and fifth factors therefore weigh in favor of final approval.

17.     The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motions would likely require extensive discovery and briefing. If the Court did authorize notice to the FLSA

9

collective, Defendant would likely challenge that determination by seeking decertification at a later date, after the close of discovery.  If the Court were to grant class certification, Defendant might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

18.     Even if Capital One could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Holocaust Litigation*, 80 F. Supp. 2d at 178 n.9).    Accordingly, the seventh *Grinnell* factor favors final approval.

19.     The amount of the Settlement weighs in favor of final approval.    The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178) (internal quotation marks omitted).  "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The eighth and ninth *Grinnell* factor favors final approval.

### *FLSA Certification and Approval of FLSA Settlement*

20.     Pursuant to 29 U.S.C. § 216(b), the Court certifies, for settlement purposes only, the following collective action:  All individuals who were employed by Defendant in the United States as Assistant Branch Managers at any time from March 7, 2011 through July 7, 2014.

21.     The Court hereby approves the FLSA settlement.

22.     The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *Torres*, 2010 WL 5507892, at *6; *Clark*, 2010 WL 1948198, at *7; *see also McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (describing due process implications inherent in Rule 23 class actions).

23.     Courts approve FLSA settlement when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *Clem*, 2014 WL 2895918, at *7; *Yuzary*, 2013 WL 5492998, at *7; *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."  *Torres*, 2010 WL 5507892, at *6 (quoting *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *6 (S.D.N.Y. Aug. 23, 2010).  If the proposed settlement reflects a reasonable compromise over disputed issues, the settlement should be approved.  *Lynn's Food Stores, Inc.*, 697 F.3d at 1354.

24.     The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation.

### *Dissemination of Notice*

25.     Pursuant to the Preliminary Approval Order, the Notices were sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notices).  Swartz Decl. Ex. XX ("XX Decl.") ¶¶ XX-XX. The Court finds that the procedures for notifying the Rule 23 Class Members and FLSA Class Members about the Settlement, including the Class Notices and related documents, constituted the best notice practicable under the circumstances to all Rule 23 Class Members and FLSA Class Members, and fully satisfied all necessary requirements of due process.  Based on the evidence and other

materials submitted to the Court, the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, and the Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing provided adequate, due, sufficient and valid notice of the Settlement.

### Award of Fees and Costs to Class Counsel and Award of Service Awards to Named Plaintiffs and Opt-in Plaintiffs

26.     On XX XX, 2014, the Court appointed Outten & Golden LLP and Shavitz Law Group, P.A. as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g).

27.     Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

28.     Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law.  *See, e.g.*, *Clem*, 2014 WL 2895918, at *8 ("Class Counsel are experienced employment lawyers with good reputations among the employment law bar"); *Yuzary*, 2013 WL 5492998, at *9 (same); *Diaz*, 2010 WL 5507912, at *6 (O&G "are experienced class action employment lawyers and have extensive experience prosecuting and settling wage and hour class actions."); *Clark*, 2010 WL 1948198, at *8 (same); *see also* *deMunecas*, 2010 WL 3322580, at *7 ("Class Counsel, Outten & Golden LLP, are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settlement many employment law class actions, including wage and hour class actions.").

29.     The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests.   Class Counsel have committed substantial resources to prosecuting this case.

30.     The Court hereby grants Plaintiffs' Motion for Attorneys' Fees and awards Class Counsel $1,000,000 in attorneys' fees, or one-third of the fund (including any interest in the fund).

31.     The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit."   *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Clem*, 2014 WL 2895918, at *8-9 (following percentage-of-the-fund method) *Yuzary*, 2013 WL 5492998, at *9 (same); *Diaz*, 2010 WL 5507912, at *7-8 (same); *deMunecas*, 2010 WL 3322580, at * 8-9 (same); *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

32.     In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.   *See Clem*, 2014 WL 2895918, at *8; *Yuzary*, 2013 WL 5492998, at *9; *Frank*, 228 F.R.D. at 189.   Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.   *See Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (discussing remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.*, 586 F. Supp. 488, 491-92

(S.D.N.Y. 1984) (discussing remedial purpose of NYLL); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 994 (N.Y. 2008) (discussing remedial purpose of NYLL).

33.     Class Counsel's request for one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *Clem*, 2014 WL 2895918, at *9 (granting class counsel 33% of settlement fund); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); *Clark*, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global Tech. Co.*, No. 00 Civ. 8495, 186 F. Supp. 2d 358, 369-70 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

34.     Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.  A percentage-of-recovery fee award of one-third is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  While *Arbor Hill* is not controlling here because it does not address a common fund fee petition, it supports a one-third recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success.  *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

35.     All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third of the fund.

36.     The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.  *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

37.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $XXXX, which the Court deems to be reasonable.  Courts typically allow counsel to recover their reasonable out-of-pocket expenses.  *See Clem*, 2014 WL 2895918, at *10; *Yuzary*, 2013 WL 5492998, at *11; *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

38.     The attorneys' fees awarded and the amount in reimbursement of litigation costs and expenses shall be paid from the settlement fund.

39.     The Court finds reasonable service awards of $6,000 each to Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang, and Jean Alonge, and service awards of $3,000 each to Howard Jones, Teresa Lartey, and Rocio Rueda.  These amounts shall be paid from the settlement fund.

40.     Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See Clem*, 2014 WL 2895918, at *10 (granting service awards of $7,500 each); *Yuzary*, 2013 WL 5492998, at *12 (finding reasonable service awards of $10,000 each);

*Torres*, 2010 WL 5507892, at *8 (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Clark*, 2010 WL 1948198, at *9 (granting service awards of $10,000 to each of 7 named plaintiffs); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.").

### Conclusion and Dismissal

41.     The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

42.     The action is dismissed on the merits and with prejudice, and Rule 23 Class Members who did not opt-out are therefore permanently barred from filing, commencing, prosecuting, or pursuing the Released State Law Claims, any Rule 23 Class Members or FLSA Class Members who negotiate a settlement check are permanently barred from filing, commencing, prosecuting, or pursuing the Released State Law Claims or Released Federal Law Claims, and Plaintiffs and Service Award Plaintiffs are permanently barred from filing, commencing or prosecuting the Released Plaintiff and Service Award Plaintiff Claims, whether or not on a class or collective action basis, and from participating in any class or collective action involving such claims.

43.     The Court approves of the release of the Released Federal Law Claims and Released State Law Claims, which shall be binding on all FLSA Class Members who negotiate a

settlement check.  The Court approves of the release of the Released State Law Claims, which shall be binding on all Rule 23 Class Members who did not opt out of the applicable classes. Nothing relating to this Order, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Rule 23 Class Members, the FLSA Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter.  There has been no determination by any Court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class or collective should be certified, other than for settlement purposes only.  Furthermore, nothing in this Agreement shall be considered any form of waiver of any release agreements, alternative dispute resolution agreements, provisions, or policies by Defendant or Releasees.

44.     The Court shall have exclusive and continuing jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Stipulation and this Final Approval Order.

45.     The Parties are ordered to carry out the Settlement as provided in the Stipulation.

46.     This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED:_____ , 2014

_____
Hon. Henry Pitman
United States Magistrate Judge

17

**<u>EXHIBIT B</u>**

**NOTICE OF PROPOSED SETTLEMENT OF CLASS AND COLLECTIVE
ACTION LAWSUIT AND FAIRNESS HEARING**

**[NAME]**
**[ADDRESS]**
**[CITY, STATE ZIP]**

---

# If you were an Assistant Branch Manager employed by Capital One, N.A., you may be entitled to a payment from a class and collective action lawsuit settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- This notice pertains to any Capital One, N.A. ("Capital One") employee who was employed as an Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, or Assistant Branch Sales Manager during the time periods indicated below (collectively referred to as "Assistant Branch Managers").

- Former Assistant Branch Managers have sued Capital One, alleging that Capital One failed to pay them properly for all overtime hours they worked.  The employees filed the lawsuit as a class action under various state laws and as a collective action under the Fair Labor Standards Act ("FLSA").

- Capital One denies these allegations, and maintains that its Assistant Branch Managers were properly compensated at all times.  The Parties have entered into this Settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.  The Court has not made any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

- If the settlement is approved by the Court, the settlement funds will be used to pay current and former Assistant Branch Managers who qualify for a settlement payment, as well as to pay attorneys fees, service awards, litigation costs, and the expenses of administering the settlement.

- Under the allocation formula created by the settlement, you are estimated to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings, like any other paycheck, and for which you will receive a W-2, and half of which will be reported on a 1099.  This amount is based on the number of weeks you

worked for Capital One as an Assistant Branch Manager during the applicable time period covered by this settlement.  The final amount to which you may be entitled may be higher or lower than the estimated amount.

- The settlement covers the following periods:  (a) for New York locations, the period from March 7, 2008 through July 7, 2014; (b) for all other locations, from March 7, 2011 through July 7, 2014.

- According to Capital One's records, you worked as an Assistant Branch Manager during the period covered by the settlement from _____ to _____, for a total of ___ weeks.   You may have worked longer as an Assistant Branch Manager during periods not covered by the settlement.  Capital One's personnel records are presumed to be correct unless you submit evidence to the contrary.  If you believe Capital One's personnel records are incorrect, you may submit documents proving otherwise to the Settlement Claims Administrator, at the address listed below, postmarked on or before [date 30 days from mailing of Notice and no later than 60 days from Preliminary Approval].

- Neither Class Counsel nor Capital One makes any representations concerning tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- Your legal rights may be affected.  You have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
| --- | --- |
| **DO NOTHING** | Remain part of the case and receive the estimated payment amount identified above, subject to applicable taxes and withholdings. |
| **EXCLUDE YOURSELF** | Get no payment.  If you worked for Capital One as an Assistant Branch manager in the states of New Jersey or Maryland, this is the only option that allows you to bring your own lawsuit or to be part of any other lawsuit against Capital One for unpaid wages between March 7, 2011 and July 7, 2014.  If you worked for Capital One as an Assistant Branch Manager in the state of New York, this is the only option that allows you to bring your own lawsuit or to be part of any other lawsuit against Capital One for unpaid wages between March 7, 2008 and July 7, 2014.<br><br> *If you exclude yourself from the settlement, you will not be entitled to receive any payment from the settlement fund.* |

| **OBJECT** | Write to the Court about why you disapprove of the settlement. If you exclude yourself from the settlement, you may not object. If you object in writing, you may also ask to speak in Court about the fairness of the settlement. You may only appear in Court to speak about the fairness of the settlement if you file a timely written objection to the settlement and if you do not exclude yourself from the settlement. |
|---|---|

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

# BASIC INFORMATION

## 1. Why did I get this notice?

Capital One's records state that you worked as an Assistant Branch Manager, as defined above, at Capital One in Maryland between March 7, 2011 and July 7, 2014, in New Jersey between March 7, 2012 and July 7, 2014, or in New York between March 7, 2008 and July 7, 2014. The Court ordered that you be sent this notice because you have a right to know about a proposed settlement of a class and collective action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are heard, payments will be mailed to class members who do not exclude themselves.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the Southern District of New York. This lawsuit is known as *Mills, et al. v. Capital One, N.A.*, No. 14 Civ. 1937 (SHS) (HP).

The people who filed the lawsuit are called the "Plaintiffs." Capital One is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit is about whether Capital One improperly classified Assistant Branch Managers as exempt employees who are not entitled to receive overtime pay under state and federal wage and hour laws, and whether Capital One failed to pay Assistant Branch Managers overtime premium pay for the time they worked in excess of 40 hours a week.

Capital One denies it did anything wrong, and believes that its Assistant Branch Managers are properly compensated as employees who are exempt from overtime.

The Court has not made any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

## 3. Why is this a class action?

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims.  The people together are a "Class" or "Class Members."  The Assistant Branch Managers who sued are called the Plaintiffs.  One court resolves the issues for everyone in the Class—except for those who choose to exclude themselves from the Class.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendant.  Both sides believe they would have prevailed in the case, but there was no decision ruling in favor of either party.  Instead, both sides agreed to a settlement.  That way, they avoid the cost of a trial, and the people affected will get compensation.  The Class Representatives and their attorneys think the settlement is best for all Class Members.

# WHO IS IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

You are automatically a member of the Class if you worked for Capital One as an Assistant Branch Manager, as defined above, in Maryland between March 7, 2011 and July 7, 2014, in New Jersey between March 7, 2012 and July 7, 2014, or in New York between March 7, 2008 and July 7, 2014.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

## 6. What does the settlement provide?

The settlement shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes), interest, and the Settlement Claims Administrator's fees and costs.  The settlement funds for Class Members will be divided among current and former Assistant Branch Managers who are covered by the settlement, based on the number of weeks they worked during the period covered by the settlement, and the state in which they worked.  Settlement checks that are issued to Class Members that are not cashed within 90 days will be null and void.

## 7. How much will my payment be?

Based on the formula that has been preliminarily approved by the Court, you will be entitled to receive approximately $                              , half of which is subject to

deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2, and half of which will be reported on a 1099.  The final amount to which you may be entitled may be higher or lower than the estimated amount.   The allocation formula takes into account the number of weeks you worked as an Assistant Branch Manager during the period covered by the settlement, whether you signed a prior release of claims, and the state in which you worked.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 21, below.

# HOW YOU GET A PAYMENT

## 8.  How can I get my payment?

You do not need to do anything to receive the payment identified in Paragraph 7.  If you choose to exclude yourself, then you will not receive a payment.

## 9.  When will I get my payment?

The Court will hold a hearing on _____, at _____ to determine whether to approve the settlement.  If the Court approves the settlement, there may be appeals after that.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

## 10.  What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself (as explained in Paragraph 11 below), you will remain in the Class.  This means that you cannot sue, continue to sue, or be part of any other lawsuit against Capital One or the Releasees about any Released State Law Claims, which are defined below.  It also means that all of the Court's orders will apply to you and legally bind you.

"Released State Law Claims"  "Released State Law Claims" shall collectively mean any and all wage and hour claims against Releasees under New York law, New Jersey law, Maryland law, and other state and local law that accrued or accrue up through July 7, 2014, whether known or unknown, of whatever kind and nature, character and description, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or derivative claims under the Employee Retirement Income Security Act ("ERISA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

In addition, if you cash the settlement check that will be sent to you if the settlement is approved, and after any appeals are resolved, you also release your Released Federal Law

Claims.  This means that you cannot sue, continue to sue, or be part of any other lawsuit against Capital One or the Releasees about any Released Federal Law Claims, which are defined below.

"Released Federal Law Claims" shall collectively mean any and all federal law wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by an FLSA Class Action Member that accrued on any date up through July 7, 2014, for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

"Releasees" means Capital One, N.A., Capital One Financial Corporation, and their present and former affiliates, divisions, subsidiaries, parents, predecessors and their affiliated and related entities, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

The released Federal and State Claims include all claims identified above, including claims that you do not know or suspect to exist in your favor against Defendant or Releasees at the time of the release.  You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified above.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Capital One, on your own, about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself—or is sometimes referred to as opting out of the settlement Class.

**11.  How do I opt out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Mills, et al. v. Capital One, N.A.*, No. 14 Civ. 1937 (SHS) (HP). You must include your name, job title, address, telephone number, and signature and state "I Opt-out of the Capital One wage and hour settlement.  Your exclusion request must be postmarked no later than 30 days from mailing of Notice and no later than 60 days from Preliminary Approval and it must be mailed to:

Rust Consulting, Inc.
Capital One Settlement
XXXXXXXXXXXXXX
XXXXXX, XX XXXX
(___) ___-____

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit. You may also be able to sue (or continue to sue) Capital One in the future about the legal issues in this case.  If you wish to exclude yourself in order to file an individual lawsuit against Capital One, you should speak to a lawyer as soon as possible because your claims are subject to a statute of limitations, which means that they will expire on a certain date.

**12.  If I don't exclude myself, can I sue Capital One for the same thing later?**

No.  Unless you exclude yourself, you give up any rights to sue Capital One for the same claims in this case.  If you have a pending lawsuit, speak to your lawyer in that case immediately to see if this settlement will affect your other case.  Remember, the exclusion deadline is 30 days from mailing of Notice and no later than 60 days from Preliminary Approval.

**13.  If I exclude myself, can I get money from this settlement?**

No.  If you exclude yourself, you will not receive any money from this lawsuit.  But, you may sue, continue to sue, or be part of a different lawsuit against Capital One regarding these same claims.

# THE LAWYERS REPRESENTING YOU

**14.  Do I have a lawyer in this case?**

The Court has decided that the lawyers at the law firms of Outten & Golden LLP and the Shavitz Law Group, P. A. are qualified to represent you and all Class Members.  These lawyers are called "Class Counsel."  You will not be charged for these lawyers.  You do not need to retain your own attorney in order to participate as a Class Member.  If you do not opt out of the Class and want to be represented by your own lawyer, you may hire one at your own expense.

**15.  How will the lawyers be paid?**

Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund for attorneys' fees.  These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Class Counsel will also ask the Court to approve payment of up to $20,000 for their out-of-pocket costs, excluding the cost of the settlement administrator.  The cost of the settlement administrator will also come from the settlement fund.  The Court may award less than these amounts.  Capital One has agreed not to oppose these fees.

Class Counsel will also ask the Court to approve payments of $57,000 in total to the Class Representatives and other individuals who joined the lawsuit before the settlement in recognition of the risks they took and their service to the Class.   This amount includes payments of $6,000 to eight of the Named Plaintiffs, and payments of $3,000 to three of the individuals who joined the lawsuit before the settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

| 16.  How do I tell the Court that I disapprove of the settlement? |
| --- |

If you're a Class Member and have not excluded yourself, you can object to the settlement if you disapprove of it.   You can give reasons why you think the Court should not approve it.   The Court will consider your views.   To object, you must send a letter saying that you object to *Mills, et al. v. Capital One, N.A.*, No. 14 Civ. 1937 (SHS) (HP).   Be sure to include your name, job title, address, telephone number, your signature, and state the reasons you object to the settlement and include the words "I object to the settlement in the Capital One overtime case."   Mail the objection to:

Rust Consulting, Inc.
Capital One ABM Settlement
XXXXXXXXXXXXXX
XXXXXX, XX XXXX
(___) ___-____

Your letter must be postmarked no later than ==30 days from mailing of Notice and no later than 60 days from Preliminary Approval==.

## Do not contact the Court directly for any reason.

| 17.  What's the difference between objecting and excluding? |
| --- |

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class.   Excluding yourself is telling the Court that you don't want to be part of the Class.   If you exclude yourself, you have no basis to object because the case no longer affects you.   If you submit both an objection and an exclusion request, the Claims Administrator will attempt to contact you to determine whether you intended to object or exclude yourself.   If the Claims Administrator cannot reach you, it will be presumed that you intended to exclude yourself, and your objection will not be considered.

## THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement.   You may attend and you may ask to speak, but you don't have to.   If you wish to bring anything to the Court's attention about the settlement, you should provide it in writing to the Claims

Administrator according to Paragraph 16 above, who will provide your letter to the Court before the fairness hearing.

**18.   When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on _____ at _____, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, in Courtroom ___.

The purpose of this hearing will be for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court.  The Court will take into account any comments or objections from Class Members filed in accordance with required procedures explained in Section 16.  Only Class Members who have requested to speak at the hearing in accordance with Section 20 below will be permitted to so do.

**19.   Do I have to come to the hearing?**

No.  Class Counsel will answer questions the Court may have.  But, you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you have not excluded yourself and have mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.

**20.   May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Mills, et al. v. Capital One, N.A.*, No. 14 Civ. 1937 (SHS) (HP)."  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than _____, and be sent to the Claims Administrator at the address in Paragraph 16.  You cannot speak at the hearing if you exclude yourself from the settlement.

# GETTING MORE INFORMATION

**21.   Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by sending a request, in writing, to

Rust Consulting, Inc.
Capital One ABM Settlement
XXXXXXXXXXXXXX
XXXXXX, XX XXXX
(___) ___-____

## 22.  How do I get more information?

If you have other questions about the settlement, you can contact the Settlement Claims Administrator, or Class Counsel at the addresses and/or telephone numbers below.

Justin M. Swartz
Michael N. Litrownik
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone:  (212) 245-1000

Jennifer L. Liu
Outten & Golden LLP
1 Embarcadero Center, 38th Floor
San Francisco, CA 94131
Telephone:  (415) 638-8800
CapitalOneABMSettlement@outtengolden.com

Gregg I. Shavitz
Susan H. Stern
Shavitz Law Group, P.A.
1515 South Federal Highway, Suite 404
Telephone:  (561) 447-8888

DATED:        _____, 2014

**EXHIBIT C**

**NOTICE OF PROPOSED SETTLEMENT OF COLLECTIVE
ACTION LAWSUIT AND FAIRNESS HEARING**

**[NAME]
[ADDRESS]
[CITY, STATE ZIP]**

---

# If you were an Assistant Branch Manager employed by Capital One, N.A., you may be entitled to a payment from a collective action lawsuit settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- This notice pertains to any Capital One, N.A. ("Capital One") employee who was employed as an Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, or Assistant Branch Sales Manager between March 7, 2011 and July 7, 2014 (collectively referred to as "Assistant Branch Managers").

- Former Assistant Branch Managers have sued Capital One, alleging that Capital One failed to pay them properly for all overtime hours they worked. The employees filed the lawsuit as a class action under various state laws and as a collective action under the Fair Labor Standards Act ("FLSA").

- Capital One denies these allegations, and maintains that its Assistant Branch Managers were properly compensated at all times. The Parties have entered into this Settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense. The Court has not made any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

- If the settlement is approved by the Court, the settlement funds will be used to pay current and former Assistant Branch Managers who qualify for a settlement payment, as well as to pay attorneys fees, service awards, litigation costs, and the expenses of administering the settlement.

- Under the allocation formula created by the settlement, you are estimated to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings, like any other paycheck, and for which you will receive a W-2, and half of which will be reported on a 1099. This amount is based on the number of weeks you worked for Capital One as an Assistant Branch Manager during the applicable time period covered

1

by this settlement.  The final amount to which you may be entitled may be higher or lower than the estimated amount.

- The settlement covers the following periods:  (a) for New York locations, the period from March 7, 2008 through July 7, 2014; (b) for all other locations, from March 7, 2011 through July 7, 2014.

- According to Capital One's records, you worked as an Assistant Branch Manager during the period covered by the settlement from _____ to_____, for a total of  ___ weeks. You may have worked longer as an Assistant Branch Manager during periods not covered by the settlement.  Capital One's personnel records are presumed to be correct unless you submit evidence to the contrary.  If you believe Capital One's personnel records are incorrect, you may submit documents proving otherwise to the Settlement Claims Administrator, at the address listed below, postmarked on or before [date 30 days from mailing of Notice and no later than 60 days from Preliminary Approval].

- Neither Class Counsel nor Capital One makes any representations concerning tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- Your legal rights may be affected.  There is nothing for you to do at this time, but when you receive your Notice of Final Approval of the Settlement and Settlement Check, you will have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **ENDORSE AND DEPOSIT THE CHECK** | By endorsing and depositing the check you will signal your agreement to participate in the settlement and receive the payment amount identified on the check. |
| **DO NOT DEPOSIT THE CHECK** | If you do not wish to participate in, or be bound by, the settlement you should not deposit the check. |

- These rights and options are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

2

# BASIC INFORMATION

## 1. Why did I get this notice?

Capital One's records state that you worked as an Assistant Branch Manager, as defined above, at Capital One for one or more workweeks between March 7, 2011 and July 7, 2014.

The Court ordered that you be sent this notice because you have a right to know about a proposed settlement of a collective action lawsuit, and about all of your options, before the Court decides whether to approve the settlement.  If the Court approves the settlement and after objections and appeals are heard, payments will be mailed to potential members of the collective.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the Southern District of New York.  This lawsuit is known as *Mills, et al. v. Capital One, N.A.*, No. 14 Civ. 1937 (SHS) (HP).

The people who filed the lawsuit are called the "Plaintiffs."  Capital One is called the "Defendant."

## 2. What is this lawsuit about?

This lawsuit is about whether Capital One improperly classified Assistant Branch Managers as exempt employees who are not entitled to receive overtime pay under state and federal wage and hour laws, and whether Capital One failed to pay Assistant Branch Managers overtime premium pay for the time they worked in excess of 40 hours a week.

Capital One denies it did anything wrong, and believes that its Assistant Branch Managers are properly compensated as employees who are exempt from overtime.

The Court has not made any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

## 3. What is a collective action?

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims.  However, other Assistant Branch Managers who have similar claims do not become part of the Collective Action until they opt into the Collective Action.  You may opt into the Collective Action part of this lawsuit and become a "Collective Action Member" by cashing the settlement check that will be mailed to you if and when the Court approves the settlement and after all objections and appeals have been heard.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendant.  Both sides believe they would have prevailed in this case, but there was no decision ruling in favor of either party.  Instead, both sides agreed to a settlement.  That way, they avoid the cost of a trial, and the people affected will

3

get compensation.  The Plaintiffs and their attorneys think the settlement is best for all potential Collective Action Members.

## WHO IS IN THE SETTLEMENT

**5. How do I know if I will be included in the settlement?**

If the Court grants approval of the settlement, you will receive a settlement check and an opportunity to join the Collective Action.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**6.  What does the settlement provide?**

The settlement shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, all payroll taxes and all other applicable taxes (with the sole exception and exclusion of the employer's share of payroll taxes), interest, and the Settlement Claims Administrator's fees and costs.  The settlement funds for Class Members will be divided among current and former Assistant Branch Managers who are covered by the settlement, based on the number of weeks they worked during the period covered by the settlement, and the state in which they worked.  Settlement checks that are issued to potential Collective Action Members that are not cashed within 90 days will be null and void.

**7.  How much will my payment be?**

Based on the formula that has been preliminarily approved by the Court, you are estimated to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive a W-2, and half of which will be reported on a 1099.  The final amount to which you may be entitled may be higher or lower than the estimated amount.  The allocation formula takes into account the number of weeks you worked as an Assistant Branch Manager during the period covered by the settlement and whether you signed a prior release of claims.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 15, below.

## HOW YOU GET A PAYMENT

**8.  How can I get my payment?**

You do not need to do anything to receive the payment identified in Paragraph 7.  If and when the Court approves the settlement and after all objections and appeals have been heard, you will be sent a settlement check.  By cashing the settlement check, you agree to join the Collective Action.  If you do not cash the settlement check within 90 days of the date the check is mailed to

you, you will not become part of the Collective Action, and you will not receive a settlement payment.

## 9.  When will I get my payment?

The Court will hold a hearing on _____, at _____ to determine whether to approve the settlement.  If the Court approves the settlement, there may be appeals after that.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Please be patient.

## 10.  What am I giving up to get a payment or join the Collective?

You will not become a member of the Collective Action unless you cash the settlement check that will be mailed to you if and when the Court approves the settlement and after all objections and appeals have been heard.  If you cash your settlement check, you cannot sue, continue to sue, or be a party in any other lawsuit against Capital One or the Releasees about any Released Federal or State Law Claims, which are defined below.  It also means that all of the Court's orders will apply to you and legally bind you.

"Released Federal Law Claims" shall collectively mean any and all federal law wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by an FLSA Class Action Member that accrued on any date up through July 7, 2014 for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

"Released State Law Claims"  "Released State Law Claims" shall collectively mean any and all wage and hour claims against Releasees under New York law, New Jersey law, Maryland law, and other state and local law that accrued or accrue on any date up through July 7, 2014, whether known or unknown, of whatever kind and nature, character and description,  including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or derivative claims under the Employee Retirement Income Security Act ("ERISA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

"Releasees" means Capital One, N.A., Capital One Financial Corporation, and their present and former affiliates, divisions, subsidiaries, parents, predecessors and their affiliated and related entities, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee

benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

The released Federal and State Claims include all claims identified above, including claims that you do not know or suspect to exist in your favor against Defendant or Releasees at the time of the release.  You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified above.

# THE LAWYERS REPRESENTING YOU

| **11.  Do I have a lawyer in this case?** |
|---|

The Court has decided that the lawyers at the law firms of Outten & Golden LLP and the Shavitz Law Group, P.A. are qualified to represent you and all Collective Action Members.  These lawyers are called "Class Counsel."  You will not be charged for these lawyers.  You do not need to retain your own attorney in order to participate as a Collective Action Member.  If you do not choose to join the Collective Action and want to be represented by your own lawyer, you may hire one at your own expense.

| **12.  How will the lawyers be paid?** |
|---|

Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund for attorneys' fees.  These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Class Counsel will also ask the Court to approve payment of up to $20,000 for their out-of-pocket costs, excluding the cost of the settlement administrator.  The cost of the settlement administrator will also come from the settlement fund.  The Court may award less than these amounts.  Capital One has agreed not to oppose these fees.

Class Counsel will also ask the Court to approve payments of $57,000 in total to the Named Plaintiffs and other individuals who joined the lawsuit before the settlement in recognition of the risks they took and their service to the Collective.  This amount includes payments of $6,000 to eight of the Named Plaintiffs, and payments of $3,000 to three of the individuals who joined the lawsuit before the settlement.

# THE COURT'S FAIRNESS HEARING

**13.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on _____ at _____, at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, in Courtroom ____.

The purpose of this hearing will be for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court.  You do not need to appear at the Fairness Hearing.

# GETTING MORE INFORMATION

**14.  Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to

Rust Consulting, Inc.
Capital One ABM Settlement
XXXXXXXXXXXXXX
XXXXXX, XX XXXX
(___) ___-____

**15.  How do I get more information?**

If you have other questions about the settlement, you can contact the Settlement Claims Administrator, or Class Counsel at the addresses and/or telephone numbers below.

Justin M. Swartz
Michael N. Litrownik
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone:  (212) 245-1000

Jennifer L. Liu
Outten & Golden LLP
1 Embarcadero Center, 38th Floor
San Francisco, CA 94131
Telephone:  (415) 638-8800
CapitalOneABMSettlement@outtengolden.com

7

Gregg I. Shavitz
Susan H. Stern
Shavitz Law Group, P.A.
1515 South Federal Highway, Suite 404
Telephone:  (561) 447-8888

DATED:  _____, 2014

<u>**EXHIBIT D**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PATRICIA MILLS, RHONDA JONES, LAUREL MARTIN, WILLIAM SCOTT-SELGADO, KRISTEN SMITH, BRAD SALAZAR, VERONICA SANDOVAL-WANG, and JEAN ALONGE, on behalf of themselves and all others similarly situated,<br><br>                         Plaintiffs,<br>    -against-<br><br>CAPITAL ONE, N.A.,<br><br>                        Defendant. | **No. 14 Civ. 1937 (SHS) (HP)** |

<u>**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**</u>

On _____, the Court heard an unopposed motion for preliminary approval of a settlement of a putative class and collective action by PATRICIA MILLS, RHONDA JONES, LAUREL MARTIN, WILLIAM SCOTT-SELGADO, KRISTEN SMITH, BRAD SALAZAR, VERONICA SANDOVAL-WANG, and JEAN ALONGE (collectively referred to as "Class Representatives"), on behalf of themselves and all others similarly situated, and Defendant CAPITAL ONE, N.A. ("Defendant" or "Capital One").  The Court has considered the Joint Stipulation of Settlement and Release ("Stipulation"), and its attached exhibits, and the Declarations of Justin M. Swartz ("Swartz Decl.") and Gregg I. Shavitz ("Shavitz Decl."), and hereby finds and orders as follows:

**I.    Provisional Approval of Settlement**

      1.      Unless otherwise defined herein, all terms used in this order (the "Preliminary

Approval Order") will have the same meaning as defined in the Stipulation.

2.      The Court finds on a preliminary basis that the settlement memorialized in the Stipulation, filed with the Court, falls within the range of reasonableness and, therefore, meets the requirements for preliminary approval such that notice to the class is appropriate.  *See In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013).

3.      The Court finds that the Stipulation is the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Clem*, 2014 WL 2895918, at *4-5.

4.      The assistance of an experienced class action mediator, Michael E. Dickstein, reinforces that the Stipulation is non-collusive.  *Palacio v. E*Trade Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (granting preliminary approval to settlement that resulted from mediation overseen by Michael E. Dickstein); *Westerfield v. Wash. Mut. Bank*, No. 06 Civ. 2817, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (same).

5.      The Court grants preliminary approval of the parties' Stipulation.

**II.     Certification of the Proposed Rule 23 Classes For Settlement Purposes Only**

6.      Provisional settlement, class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring all class members are notified of the terms of the proposed Stipulation, and setting the date and time of the final approval hearing.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting

practical purposes of provisionally certifying settlement class); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *1 (S.D.N.Y. Jan. 21, 2011) (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

7.       Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court conditionally certifies, for settlement purposes only, (and for no other purpose and with no other effect upon this or any other action, including no effect upon this action should the Settlement not ultimately be approved), the following Rule 23 classes:

(A)       A New York class consisting of all individuals who were employed by Defendant in one of the following job titles: Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, or Assistant Branch Sales Manager (collectively, "Assistant Branch Managers") in the State of New York from March 7, 2008 through July 7, 2014.

(B)       A New Jersey class consisting of all individuals who were employed as Assistant Branch Managers by Defendant in the State of New Jersey from March 7, 2012 through July 7, 2014.

(C)       A Maryland Class consisting of all individuals who were employed as Assistant Branch Managers by Defendant in the State of Maryland from March 7, 2011 through July 7, 2014.

8.       The Court appoints, for settlement purposes only, Plaintiffs Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang and Jean Alonge as Class Representatives; Plaintiff Patricia Mills as representative of the New York Class, Plaintiffs Veronica Sandoval-Wang, Kristen Smith, and Jean Alonge as representatives of the Maryland Class, and Plaintiffs Rhonda Jones, Laurel

Martin, William Scott-Selgado, and Brad Salazar as  representatives of the New Jersey class.

9.      For settlement purposes only, Plaintiffs meet all of the requirements for class

certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

**III.    Appointment of Plaintiffs' Counsel as Class Counsel**

10.      For settlement purposes only, the Court appoints Outten & Golden LLP ("O&G")

and Shavitz Law Group, P.A. ("Plaintiffs' Counsel") as Class Counsel because they meet all of

the requirements under Federal Rule of Civil Procedure 23(g).  *See Clem*, 2014 WL 1265909, at

*5 (appointing O&G and Shavitz Law Group, P.A. as plaintiffs' counsel) (citing *Damassia v.*

*Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to

consider "the work counsel has done in identifying or investigating potential claims in the action,

… counsel's experience in handling class actions, other complex litigation, and claims of the

type asserted in the action, … counsel's knowledge of the applicable law, and … the resources

counsel will commit to representing the class") (internal quotation marks omitted)); *Yuzary*, 2013

WL 1832181, at *4-5 (same).

11.      Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting,

and settling Plaintiffs' and Class Members' claims.

12.      O&G attorneys "have substantial experience prosecuting and settling employment

class actions, including wage and hour class actions[,] and are well-versed in wage and hour law

and class action law."  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473 (S.D.N.Y. 2013)

(internal quotation marks and citation omitted); *see also Clem*, 2014 WL 1265909 at *5

(appointing O&G and Shavitz Law Group as class counsel); *Yuzary*, 2013 WL 1832181 at *4

(finding O&G and Shavitz Law Group experienced and adequate to serve as class counsel).

Likewise, the Shavitz Law Group has acted as lead counsel or co-counsel on dozens of wage and

hour class and collective actions.  *See, e.g.*, *Clem*, 2014 WL 1265909 at *5; *Yuzary*, 2013 WL 5492998 at *4; *Beckman*, 293 F.R.D. at 473; *Palacio,* 2012 WL 1058409 at *2 (S.D.N.Y. Mar. 12, 2012) (appointing O&G and Shavitz Law Group as class counsel based on their experience in "numerous wage and hour class and collective actions").

13.     The work that Plaintiffs' Counsel has performed both in litigating and settling this case demonstrates their skill and commitment to representing the class's interests.

**IV.     Notice**

14.     The Court approves Rust Consulting, Inc. as the Settlement Claims Administrator to perform duties in accordance with Sections 2 and 3 of the Stipulation.

15.     The Court finds that the procedures for notifying the Rule 23 Class and FLSA Class about the Settlement as described in the Stipulation provide the best notice practicable under the circumstances and therefore meet the requirements of due process, and directs the mailing of the Notices in accordance with the Stipulation.

16.     The Court approves, as to form and content, the Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, attached to the Stipulation as Exhibit B, and Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing, attached to the Stipulation as Exhibit C (collectively, the "Proposed Notices").  The Settlement Claims Administrator is authorized to mail those documents, after they are updated with the appropriate dates and deadlines consistent with the Stipulation, to the applicable Class Members as provided in the Stipulation.

17.     The Proposed Notices satisfy Federal Rule of Civil Procedure 23(c)(2)(B) and adequately put Class Members on notice of the proposed settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the

terms of the settlement generally"). The Proposed Notices are appropriate because they describe the terms of the settlement, inform the classes about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *Id* at 60-4.; *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2010 WL 5509089, at *3-4 (E.D.N.Y. Nov. 29, 2010).

18.     Any written objection to the settlement by a Rule 23 Class Member who has not opted-out must be filed with this Court no later than thirty (30) days after the Class Notice is mailed to the Rule 23 Class Members by the Settlement Claims Administrator, and no later than sixty (60) days from the date of this Order.

**V.     Class Action Settlement Procedure**

19.     The Court hereby adopts the settlement approval process as set forth in the Stipulation.

20.     In the event that the Effective Date as defined in the Stipulation does not occur, the Settlement and the Stipulation shall be deemed null and void and shall have no effect whatsoever, other than the publicity provisions in Paragraph 5.14, and the non-admission provisions in Paragraph 4.3, which shall remain in effect. In such case, nothing in the Stipulation or this Order shall be relied upon, cited as, constitute evidence of, or constitute an admission that class or collective action certification is or may be appropriate in this action or any other matter.

21.     Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Plaintiffs and all Class Members and anyone acting on behalf of any Class Member shall be barred and enjoined from: (a) further litigation in this Action; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against Capital

One in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

22.      The parties are ordered to carry out the Settlement according to the terms of the Stipulation.

23.      Defendant will not be required to respond to the Complaint unless the Settlement is not finally approved.  In such event, the parties will confer and propose a date for such response.

24.      The Court will conduct a Fairness and Good Faith Determination Hearing on _____, 2014 at _____ a.m./p.m. for the purposes of:  (a) making a final determination of the fairness, adequacy, and reasonableness of the Settlement terms and procedures; (b) fixing the amount of attorneys' fees and litigation costs and expenses to Class Counsel and enhancement awards to the Plaintiffs and Service Award Plaintiffs; (c) hearing any timely and properly filed objections; and (d) entering Judgment.  The Fairness and Good Faith Determination Hearing may be continued without further notice to Class Members. The Plaintiffs shall file their motion for final approval of the settlement, and Class Counsel shall file their motion for attorneys' fees, litigation costs and expenses, and enhancement awards on or before _____, 2014.


**IT IS SO ORDERED**.


Dated: _____, 2014                    _____
                                                Hon. Henry Pitman
                                                United States Magistrate Judge


7

<u>**EXHIBIT E**</u>

**SETTLEMENT NOTICE**

You are receiving the enclosed check because Capital One, N.A.'s ("Capital One's") records show that you were employed by Capital One as an Assistant Branch Manager during the Covered Period and are therefore eligible to participate in the settlement of the case captioned *Patricia Mills et al v. Capital One, N.A.*, No. 14-cv-1937 (SHS) (HP) (U.S. District Court for the Southern District of New York) (the "Lawsuit")

1.     **WHAT IS THE PURPOSE OF THIS NOTICE?**

**PLEASE READ THIS NOTICE CAREFULLY.**  You are entitled to cash the enclosed check, which represents your share of the settlement.  This Notice contains important information about your rights concerning the Final Order and Judgment issued in the Lawsuit.  The Court has ordered that this Settlement Notice be sent to you to inform you of those rights.

**YOU HAVE UNTIL [DATE 90 DAYS FROM MAILING] TO CASH THIS CHECK.  IF YOU DO NOT CASH THE ENCLOSED CHECK BY _____ IT WILL BECOME VOID.**

2.     **WHAT IS THIS CASE ABOUT?**

The Lawsuit asserted claims under the Fair Labor Standards Act ("FLSA") and similar state laws alleging that Capital One failed to properly compensate Assistant Branch Managers for overtime, or hours worked in excess of forty per workweek, by misclassifying Assistant Branch Managers as exempt employees under the FLSA.

Capital One denies these allegations and believes that Assistant Branch Managers were properly classified as exempt and received all monies to which they were entitled.  The Parties have entered into this Settlement with the intention to avoid further disputes and litigation with the attendant risks, inconvenience and expense.  The Court did not make any ruling on the merits of the Plaintiffs' claims, and no party has prevailed in this action.

3.     **DEFINITIONS**

**Assistant Branch Manager**:  "Assistant Branch Manager" means the following job titles: Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, and Assistant Branch Sales Manager.

**Rule 23 Class Members:**  All persons employed by Capital One as an Assistant Branch Manager in a New York, New Jersey or Maryland location during the Covered Periods.

**FLSA Class Members:**  All individuals that worked as an Assistant Branch Manager for Capital One from March 7, 2011 through July 7, 2014.

**Covered Periods:**   The Covered Periods means (a) for New York locations, the period from March 7, 2008 through July 7, 2014; (b) for New Jersey locations, from March 7, 2012 through July 7, 2014; and (c) for Maryland locations and all locations other than New York and New Jersey, from March 7, 2011 through July 7, 2014

**Named Plaintiffs:**  The Named Plaintiffs in this lawsuit are Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang and Jean Alonge.

**Class Counsel:**  Outten & Golden LLP and Shavitz Law Group, P.A. have been approved by the Court as Counsel for the Rule 23 Class Members and FLSA Class Members.

### 4.        WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

By operation of the entry of the Final Order and Judgment, if you are a Rule 23 Class Member receiving this notice, you, on your behalf, and on behalf of your respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, have fully released and discharged Capital One, N.A., Capital One Financial Corporation, and their present and former affiliates, divisions, subsidiaries, parents, predecessors and their affiliated and related entities, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them ("Releasees"), of and from all Released State Law Claims, as defined below.  In addition, if you sign and negotiate (cash) the settlement check that is enclosed with this notice by **[date]** you will also release both the Released State Law Claims and Released Federal Law Claims, as defined below.

If you are not a Rule 23 Class Member, but only an FLSA Class Member, if you sign and negotiate (cash) the settlement check that is enclosed with this notice by **[date]** you, on your behalf, and on behalf of your respective current, former and future heirs, assigns, spouses, executors, administrators, agents, and attorneys, shall fully release and discharge Releasees of and from all Released State Law Claims and Released Federal Law Claims, as defined below.

**Released Federal Law Claims**.  "Released Federal Law Claims" shall collectively mean any and all federal law wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, by an

FLSA Class Action Member that accrued on any date up through July 7, 2014, whichever is earlier, for any type of relief under the Fair Labor Standards Act of 1938 ("FLSA"), including without limitation FLSA claims for wages, overtime, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA").

**Released State Law Claims**.  "Released State Law Claims" shall collectively mean any and all wage and hour claims against Releasees under New York law, New Jersey law, Maryland law, and other state and local law that accrued or accrue on any date up through July 7, 2014, whichever is earlier, whether known or unknown, of whatever kind and nature, character and description,  including claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages, failure to reimburse for business expenses, and/or failure to furnish accurate wage statements or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to related or derivative claims under the Employee Retirement Income Security Act ("ERISA"), other penalties, related tort and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law.

This Settlement is intended to include in its effect all claims identified above, including claims that you do not know or suspect to exist in your favor against Defendant or Releasees at the time of the release.  You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified above.

**5.       QUESTIONS**

If you have questions about this Settlement Notice or want additional information, you can contact the Settlement Claims Administrator at the address/phone number listed below.

[Settlement Claims Administrator address]

**EXHIBIT F**

**Thomas A. Linthorst**
609.919.6642
tlinthorst@morganlewis.com

DATE

Attorney General
Office of the Attorney General

Re:     *Mills v. Capital One, N.A.,* U.S. District Court, S.D.N.Y. Case No. 14 CV 1937 (SHS)  --
        Notice of Proposed Class Action Settlement Pursuant to 28 U.S.C. § 1715.

Dear CAFA Coordinator:

Defendant Capital One, N.A. ("Defendant") hereby provides this notice of a proposed class action settlement in the above-referenced class action (the "Action") pursuant to the Class Action Fairness Act of 2005 ("CAFA").  In accordance with CAFA, Defendant encloses copies of the following:

(A)     A copy of the operative complaint;

(B)     The Joint Stipulation of Settlement and Release with exhibits, including a proposed Notice of Proposed Class Action and Collective Action Lawsuit Settlement and Fairness Hearing, describing the Action and how class members may request exclusion from the class action settlement; and

(C)     A list of class members identified as having a last-known home address in your state according to Defendant's available records.[1]

Pursuant to CAFA, you are not required to comment on the settlement.  However, if you wish to comment, you must do so within ninety (90) days of being served with this notice.  *See* 28 U.S.C. §1715(d).

The Court has scheduled a hearing for INSERT, 2014 at XXX a.m. in order to consider:  (1) preliminarily approving the proposed class action settlement; (2) provisionally certifying a settlement class pursuant to Fed. R. Civ. P. 23; (3) provisionally approving the appointment of Plaintiffs Patricia Mills, Rhonda Jones, Laurel Martin, William Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-Wang and Jean Alonge as Class Representatives for settlement purposes only; (4) provisionally approving the appointment of Class Counsel for settlement purposes only, (5) provisionally approving appointment of a settlement administrator; (6) approving and directing distribution of notice to the settlement class; and (7) setting a final fairness and approval hearing.  The preliminary approval hearing will take place in Courtroom XX of the United States District Court for the Southern District of New York, located at 500 Pearl Street, New York, New York 10007-1312 .

---

[1]     As noted above, this list is premised on information currently available to Defendant.  In the event that updated contact information is located by the Claims Administrator or by the parties during the administration process, there may be certain individuals from your state who may be eligible to participate in this settlement and, conversely, individuals previously identified who no longer reside in your state.

DATE
Page 2

Under the terms of the Settlement Agreement, the expected payment amounts to class members will depend upon the amounts of attorney's fees, litigation expenses, enhancement payments to class representatives, and costs of claims administration that are awarded by the Court.  Therefore, it is not feasible to reliably estimate the proportionate share of the claims of the class members who reside in your state.  The formula for the allocation of the Net Settlement Amount will be based on the number of calendar weeks in which each participating class member was actively employed as an ABM during the Covered Period for the state(s) in which the class member was employed by Capital One through [the earlier of the date on which preliminary approval is granted or July 7, 2014] and will also depend on whether they had previously signed a release of class claims.  The proportionate share of the claims of class members who reside in your state to the entire settlement is currently estimated at approximately _.__%

Pursuant to CAFA, you are not required to comment on the settlement.  However, if you have questions about this notice, the lawsuit or the enclosed materials, or if you did not receive any of the above-listed materials, please contact us.

Very truly yours,

/S/ Thomas A. Linthorst

Thomas A. Linthorst

Enclosures

cc:      Counsel for Plaintiffs (w/o encl.)