UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PATRICIA MILLS, RHONDA JONES,          :
LAUREL MARTIN, WILLIAM SCOTT-
SELGADO, KRISTEN SMITH, BRAD           :    14 Civ. 1937 (HBP)
SALAZAR, VERONICA SANDOVAL-WANG,
and JEAN ALONGE, on behalf of          :    OPINION
themselves and others similarly             AND ORDER
situated,                              :

                    Plaintiffs,        :

     -against-                         :

CAPITAL ONE, N.A.,                     :

                    Defendant.         :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          Patricia Mills, Rhonda Jones, Laurel Martin, William

Scott-Selgado, Kristen Smith, Brad Salazar, Veronica Sandoval-

Wang, and Jean Alonge, on behalf of themselves and others

similarly situated, commenced this action against defendant

Capital One, N.A. pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL")

Article 19, §§ 650 et seq., New Jersey Wage and Hour Law

("NJWHL"), N.J. Stat. Ann, §§ 34:11-56a, et seq., Maryland Wage

and Hour Law, Md. Lab. & Emply. §§ 3-401, et seq. and the

Maryland Wage Payment and Collection Law, Md. Lab. & Employ. §§ 3-501 et seq., (collectively, the "Maryland Wage Laws") to recover, among other things, unpaid overtime, liquidated damages under the FLSA, and attorneys' fees and costs.  Plaintiffs commenced this action as a collective action under 29 U.S.C. § 216(b) and as a putative class action under Fed.R.Civ.P. 23 with respect to the state law claims.

All parties have consented to my exercising plenary jurisdiction pursuant to 18 U.S.C. § 636(c) (Docket Item 48).

By notice of motions dated October 31, 2014 (Docket Items 33, 35, 37), plaintiffs have moved for an Order (1) certifying the final settlement class (the "Settlement Class"), (2) approving the class action settlement and FLSA settlement, and (3) awarding fees and costs to class counsel, service awards to the named plaintiffs and opt-in plaintiffs, and fees to the claims administrator.[1]

---

[1]Plaintiffs filed the following documents in support of their motions: (1) Memorandum of Law in Support of Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement (Docket Item 34), (2) Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses (Docket Item 36) ("Pls. Fees Mem."), (3) Memorandum of Law in Support of Plaintiffs' Motion for Approval of Service Awards (Docket Item 38), (4) Declaration of Justin M. Swartz, Esq., with supporting exhibits (Docket Item 39) ("Swartz Decl."), (5) Declaration of Gregg I. Shavitz, Esq., with supporting
(continued...)

For the reasons set forth below, plaintiffs' motions are granted in part and denied in part.

II.  Factual and
     Procedural Background

The complaint alleges that plaintiffs, and members of the FLSA collective and putative New York, New Jersey, and Maryland classes, are or were employed by defendant as assistant branch managers ("ABMs") (Compl. ¶¶ 1, 10-55).  Plaintiffs allege that because defendant's "branches are structurally understaffed with hourly employees, ABMs spend the vast majority of their working time performing the same sales and customer service duties as non-exempt, hourly tellers and personal bankers" (Compl. ¶ 4).  Plaintiffs allege that although defendant

---

[1](...continued)
exhibits (Docket Item 40) ("Shavitz Decl.").  Plaintiffs thereafter submitted the following supplemental documents in further support of their motions: (1) Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, dated Nov. 25, 2014 (Docket Item 41)("Pls. Suppl. Fees Mem."), (2) Supplemental Declaration of Justin M. Swartz, with supporting exhibits, dated Nov. 25, 2014, (Docket Item 43) ("Swartz Suppl. Decl."), (3) Declaration of Wayne N. Outten, dated Nov. 25, 2014 (Docket Item 42), (4) Letter re: Supplemental Authority for Motion for Attorneys' Fees, Expenses, and Services Awards, dated August 4, 2015 (Docket Item 49), (5) Declaration of Michael N. Litrownik, dated Sept. 9, 2015 (Docket Number 50) ("Litrownik Decl."), and (6)Second Supplemental Declaration of Justin M. Swartz, dated September 10, 2015 (Docket Item 51) ("Swartz Second Suppl. Decl.").

regularly requires ABMs to work in excess of 40 hours per week, defendant does not pay ABMs premium overtime wages, i.e. "time and a half," pursuant to a nationwide policy of uniformly classifying ABMs as exempt from federal and state overtime provisions (Compl. ¶¶ 5, 8).

Before the complaint was filed, plaintiffs' counsel researched the potential claims against defendant by, among other things, conducting in-depth interviews with and obtaining documentation from the eight plaintiffs and three opt-in plaintiffs (Swartz Decl., ¶¶ 30-32). In July 2013, plaintiffs' counsel sent defendant a letter in which they summarized their clients' potential claims and invited Defendant to engage in pre-litigation settlement discussions (Swartz Decl., ¶ 33). The parties entered into a confidentiality agreement and exchanged documents and data to assess the claims and calculate damages. Following the exchange of further written correspondence, conference calls, and a full day mediation session before a mediator experienced in wage and hour law, the parties reached a settlement which was memorialized in a formal settlement agreement executed by the parties on or about July 29, 2014 (Swartz Decl., ¶¶ 33-38). Thus, the settlement agreement was executed just over four months after the filing of the Complaint.

Pursuant to the settlement agreement, defendant, without conceding the validity of plaintiffs' claims and without admitting liability, will establish a common fund of $3,000,000.00, to cover class members' awards, service payments, attorneys' fees and costs, and the settlement administrator's fees and costs (Swartz Decl., Ex. A ("Settlement Agreement") at §§ 3.1(A), 3.2-3.4, 4.3).  From the fund, the eight named plaintiffs will each receive service awards of $6,000.00, three opt-in plaintiffs will each receive service awards of $3,000.00, the claims administrator will receive an estimated $23,000.00 to set up and distribute the fund and counsel for plaintiffs will receive attorneys' fees and costs, subject to the court's approval, and not to exceed $1,000,000.00 (Settlement Agreement, §§ 1.18, 3.3(A); Swartz Decl., Ex. E (Declaration of Stacy Roe, Oct. 30, 2014 ("Roe Decl."), ¶ 14)).

The Settlement Agreement provides that the remainder of the settlement fund will be distributed pursuant to an allocation formula based on the number of weeks for which they were employed during the relevant limitations periods and whether they signed a prior release of state law overtime claims.  For each workweek within the relevant liability period, each class member who is not subject to a prior release of state law overtime claims shall be assigned three points and each class member who is subject to

a prior release of state law overtime claims shall be assigned one point (Swartz Decl., ¶ 65; Settlement Agreement, § 3.4(B)(1)-(3)).  Class members will then be allocated an initial pro-rata share of the settlement based on the number of points assigned to them (Settlement Agreement, § 3.4(B)(4)(a)-(c)).  Any class member who would, under this initial calculation, receive less than $50.00 will, instead, be awarded $50.00 (Settlement Agreement, § 3.4(B)(4)(c)).  The remaining funds will be distributed to the remaining Class members on a pro-rata basis (Settlement Agreement, § 3.4(B)(4)(c)-(f)).  If a Class member does not sign and cash a settlement check within 90 days of receiving it, the check will be void and the amount of the uncashed check will revert to defendant 180 days after the check's issuance. (Settlement Agreement, § 3.1(C))).

By counsel's estimation, class members will each receive an average net settlement payment (net of attorneys' fees and costs, service awards, and claims administration fees) of approximately $1,387.00 (Swartz Decl., ¶ 64).  The Settlement Agreement provides that all Rule 23 class members who do not timely opt out of the settlement release their state wage and hour law claims (Settlement Agreement, §§ 1.29, 4.1(A)). Rule 23 class members and FLSA class members who negotiate the settlement

6

check release their state wage and hour law claims and FLSA claims (Settlement Agreement, §§ 1.28-1.29, 4.1(B)).

By order dated August 1, 2014, I preliminarily approved the settlement on behalf of the class set forth therein, conditionally certified the Settlement Class, appointed Outten & Golden LLP ("Outten & Golden" or "O&G") and Shavitz Law Group, P.A ("Shavitz Law Group" or "SLG") as class counsel, and authorized notice to all class members (Order, dated Aug. 1, 2014, (Docket Item 28) ("Preliminary Approval Order")).

Pursuant to the Preliminary Approval Order, the claims administrator sent the approved notices to all class members, informing them of (1) their rights under the settlement (including the right to opt out of or object to the settlement); (2) class counsel's intention to seek one-third of the settlement fund for attorneys' fees and up to $20,000.00 in costs; (3) the request for service awards of $6,000.00 for each named plaintiff and $3,000.00 each for three opt-in plaintiffs; and (4) the claims administrator's fees and (5) the manner in which the remainder of the fund would be distributed (Roe Decl., ¶ 9; Swartz Decl., Ex. F (Rule 23 Notice), Ex. G (FLSA Notice). No class members objected to the settlement, and three class members opted out (Roe Decl., ¶¶ 12-13).

Defendant takes no position with respect to the pending motion.  I held a fairness hearing on November 14, 2014.  No class member appeared at the hearing or made a written submission concerning the settlement (Docket Item 44).

III. <u>Analysis</u>

    A.  Final Certification
       <u>of the Settlement Class</u>

In the Preliminary Approval Order, familiarity with which is assumed, I concluded that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, ascertainability and maintainability under Rule 23(a) and (b)(3), and preliminarily granted conditional certification of the Settlement Class, consisting of the following sub-classes: (1) a New York class consisting of all individuals who were employed by defendant in New York State from March 7, 2008 through July 7, 2014 in one of the following job titles: Assistant Branch Manager, Assistant Branch Manager I, Assistant Branch Manager II, Assistant Branch Manager III, Assistant Branch Operations Manager, or Assistant Branch Sales Manager (collectively "ABMs"); (2) a New Jersey Class consisting of all individuals who were employed by defendant in New Jersey from March 7, 2012 through July 7, 2014 as ABMs; (3) a Maryland Class

consisting of all individuals who were employed by defendant in Maryland from March 7, 2011 through July 7, 2014 as ABMs (Preliminary Approval Order at 3).[2]

To date, no facts have been presented to me to indicate that my preliminary determination was incorrect nor has any party claimed that my preliminary determination was erroneous. Thus, for the reasons stated in the Preliminary Approval Order, I conclude that final certification of the Settlement Class is proper.

B.   Approval of
     Settlement Agreement

Pursuant to Fed.R.Civ.P. 23(e), the settlement of a class action is not effective until judicially approved. Although there is a general policy favoring settlements, the court may approve a class action settlement only if it "is fair,

---

[2]Since the issuance of the Preliminary Approval Order, plaintiffs' counsel submitted a declaration that estimates that there are approximately 784 Rule 23 class members with 541 in the New York Class, 66 in the New Jersey Class, and 177 in the Maryland Class (Litrownik Decl., ¶¶ 4-6). These numbers easily meet the numerosity requirement for each sub-class. Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 120 (2d Cir. 2014) ("Numerosity is presumed for classes larger than forty members."), citing Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Burka v. New York City Transit Auth., 110 F.R.D. 595, 601 (S.D.N.Y. 1986) (Goettel, D.J.) ("each subclass must satisfy all of the requirements of Rule 23(a)")).

adequate, and reasonable, and not a product of collusion."  Joel
A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  This requires
consideration of both procedural and substantive fairness.  Wal-
Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir.
2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir.
2001) ("A court determines a settlement's fairness by looking at
both the settlement's terms and the negotiating process leading
to settlement.").

    1.  Procedural Fairness

        In assessing procedural fairness, there is "a
presumption of fairness, reasonableness, and adequacy as to the
settlement where 'a class settlement [is] reached in arm's-length
negotiations between experienced, capable counsel after
meaningful discovery.'"  McReynolds v. Richards-Cantave, 588 F.3d
790, 803 (2d Cir. 2009) (alteration in original), quoting Wal-
Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

        "In addition, courts encourage early settlement of
class actions, when warranted, because early settlement allows
class members to recover without unnecessary delay and allows the
judicial system to focus resources elsewhere."  Beckman v.
KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, M.J.),
citing Hernandez v. Merrill Lynch & Co., Inc., 11 Civ. 8472

10

(KBF)(DCF), 2012 WL 5862749 at *2 (S.D.N.Y. Nov. 15, 2012)
(Freeman, M.J.); Castagna v. Madison Square Garden, L.P., 09 Civ.
10211 (LTS)(HP), 2011 WL 2208614 at *6 (S.D.N.Y. June 7, 2011)
(Swain, D.J.); Diaz v. E. Locating Serv. Inc., 10 Civ. 4082
(JCF), 2010 WL 5507912 at *3 (S.D.N.Y. Nov. 29, 2010) (Francis,
M.J.).

      Here, the parties engaged in responsible, arm's-length
negotiations before and after the filing of the lawsuit to reach
an early settlement.  The parties exchanged information and
documents that enabled both sides to assess plaintiffs' claims
and calculate potential damages (Swartz Decl., ¶¶ 33-38).  On
March 7, 2014, the parties participated in a day long mediation
session in New York with Michael E. Dickstein, Esq., an
experienced mediator in wage and hour law, at which the parties
reached agreement on the settlement amount and several other key
terms (Swartz Decl., ¶ 37).  Following the filing of the
Complaint, the parties reached a final agreement that was
memorialized on or about July 29, 2014 (Swartz Decl., ¶ 38;
Settlement Agreement).

      Thus, I conclude that the settlement is procedurally
fair pursuant to Rule 23(e).

2.  <u>Substantive Fairness</u>

In assessing whether a settlement is substantively

fair, the district court must consider the nine <u>Grinnell</u> factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>McReynolds v. Richards-Cantave</u>, <u>supra</u>, 588 F.3d at 804, <u>quoting</u>

<u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir.

1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Goldberger v. Integrated</u>

<u>Res., Inc.</u>, 209 F.3d 43 (2d Cir. 2000); <u>accord</u> <u>Charron v. Wiener</u>,

731 F.3d 241, 247 (2d Cir. 2013).  All the <u>Grinnell</u> factors weigh

in favor of final approval.

The first <u>Grinnell</u> factor supports final approval

because litigation through trial would be complex, expensive and

long.

The second <u>Grinnell</u> factor weighs in favor of final

approval because the class's reaction to the settlement was very

positive.  The notices informed class members of their rights

under the settlement and all the material terms of the

12

settlement.  No class member objected to the settlement and only three opted out; this positive response to the settlement is evidence of its fairness.  See Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (Chin, D.J.) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."); see also Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 475 (concluding class reaction was positive where none objected and eight of 1,735 members opted out); Flores v. Anjost Corp., 11 Civ. 1531 (AT), 2014 WL 321831 at *5 (S.D.N.Y. Jan. 29, 2014) (Torres, D.J.) (approving settlement where no class member objected or opted out); Guaman v. Ajna-Bar NYC, 12 Civ. 2987 (DF), 2013 WL 445896 at *5 (S.D.N.Y. Feb. 5, 2013) (Freeman, M.J.) (finding fairness where there were no objections or requests for exclusion).

The third Grinnell factor also weighs in favor of final approval. When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." Prasker v. Asia Five Eight LLC, 08 Civ. 5811 (MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010) (Cedarbaum, D.J.) (citation omitted).  Here, plaintiffs' counsel conducted independent factual and legal research before conducting settlement

negotiations.  Specifically, counsel interviewed the eight plaintiffs and three opt-in plaintiffs, obtained and reviewed documents from plaintiffs related to their employment and researched publicly available information concerning defendant. The parties thereafter exchanged data to weigh the strengths and weaknesses of their claims, including through defendant's production of personnel documents relating to several of the plaintiffs and opt-in plaintiffs (Swartz Decl., ¶¶ 30-32, 35-36).

The fourth and fifth Grinnell factors support final approval. "Litigation inherently involves risks," both in establishing liability and damages.  In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (Stein, D.J.), aff'd, 117 F.3d 721 (2d Cir. 1997); see also In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969) (Motley, D.J.) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.").  Here, the claims and defenses are fact-intensive and present risks, including the potential inability to prove unpaid wages and overcoming the argument that plaintiffs are, in fact, exempt from the federal and state overtime provisions.  Plaintiffs would need to present evidence regarding the nature of the responsibilities of the class members in order to prove that plaintiffs were misclassified as well as the hours worked by each employee.  In

14

addition to the legal risk of proving liability at trial, a
substantial number of class members signed releases of their
state law claims and class/collective action waivers (Swartz
Decl., ¶ 65).  Settlement eliminates these uncertainties and the
risks resulting from the releases and waivers.

The sixth Grinnell factor, the risk of maintaining
collective and class certification throughout trial, also weighs
in favor of final approval.  A contested motion for certification
would likely require extensive discovery and briefing, and, if
granted, could potentially result in an interlocutory appeal
pursuant to Fed.R.Civ.P. 23(f) or a motion to decertify by
defendant, requiring additional briefing.  In addition, here, the
class members work in defendant's branches across the country and
are subject to different state labor laws, making a showing of
similarity more difficult than the typical wage and hour case.
See Sukhnandan v. Royal Health Care of Long Island LLC, 12 Civ.
4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014)
(Ellis, M.J.) (settlement "eliminates the risk, expense, and
delay inherent in the litigation process").

With respect to the seventh Grinnell factor, there is
no evidence that defendant could not pay a judgment greater than
the settlement amount.  However, "[e]ven if [they] could have
withstood a greater judgment, a 'defendant's ability to withstand

a greater judgment, standing alone, does not suggest that the settlement is unfair.'" Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476, quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted).  Thus, the seventh factor is neutral and does not preclude final settlement approval.

Finally, the eighth and ninth Grinnell factors weigh in favor of final approval. "'[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  Frank v. Eastman Kodak Co., supra, 228 F.R.D. at 186, quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).  Here, the three million dollar settlement falls within the range of reasonableness.  Class counsel estimate that, if defendant prevailed on a fluctuating workweek argument, the settlement amount represents approximately 49% of the class's lost wages over the liability period, assuming that class members worked overtime in 85% of total workweeks, and averaged 5 overtime hours per week (Swartz Decl., ¶ 63).  In light of the best possible recovery and the attendant risks of litigation, this settlement provides the class a fair recovery.

16

Because all the relevant factors weigh in favor of the settlement, I hereby grant the motion for final approval and unconditionally approve the settlement as set forth in the Settlement Agreement.

C.  Approval of the
    FLSA Settlement

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor.  Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  However, settlement of a collective action does not implicate the same due process concerns as the settlement of a class action because, unlike in Rule 23 class actions, the failure to opt in to an FLSA collective action does not prevent a plaintiff from bringing suit at a later date.  See Romero v. La Revise Assocs., 58 F. Supp.3d 411, 421 (S.D.N.Y. 2014) (Gorenstein, M.J.); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476.  Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation.  Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (Furman, D.J.).

17

Here, the settlement resulted from arm's-length negotiations resolving disputed issues.  During pre-litigation and post-Complaint negotiations, the parties were represented by competent counsel with extensive experience in wage and hour law, and there is no evidence that even suggests any collusion.  Accordingly, the settlement meets the standard for approval.

    D.  Dissemination
       of Notices to Class

Pursuant to the Preliminary Approval Order, Rust Consulting, Inc., the claims administrator, mailed the notices to all 1,372 known class members at his or her last known address (with remailing of returned notices) (Roe Decl., ¶¶ 9-11).  I conclude that the notices fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt in to the collective action, to object to the settlement and to appear at the fairness hearing conducted on November 14, 2014.  Pursuant to Rule 23(c)(2)(B), class members were provided with "the best notice that [was] practicable under the circumstances."  Further, I conclude that the notices and the process by which they were distributed comported with all constitutional requirements, including those

of due process.  I confirm Rust Consulting, Inc. as the claims
administrator.

      E.    Award of Fees and
             Costs to Class Counsel

      The FLSA, NYLL, NJWHL, and Maryland Wage Laws each
provide that a successful plaintiff can recover his or her
reasonable attorneys' fees and costs.  See 29 U.S.C. § 216(b);
N.Y. Labor L. §§ 198, 663(1); N.J. Stat. Ann. § 34:11-56a25; Md.
Lab. & Empl. § 3-427(d).  Even where the plaintiff agrees to a
settlement, counsel is still entitled to his or her fees under
the law.  Kahlil v. Original Old Homestead Rest., Inc., 657 F.
Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

      An application for attorneys' fees must be supported by
"contemporaneous time records" that "specify, for each attorney,
the date, the hours expended, and the nature of the work done."
New York State Ass'n for Retarded Children, Inc. v. Carey, 711
F.2d 1136, 1148 (2d Cir. 1983).  "Carey establishes what is
essentially a hard-and-fast rule 'from which attorneys may
deviate only in the rarest of cases' . . . ."  Scott v. City of
New York, 643 F.3d 56, 57 (2d Cir. 2011), quoting Scott v. City
of New York, 626 F.3d 130, 133 (2d Cir. 2010).  Not even a
District Judge's personal observations of an attorney's work can

substitute for the required contemporaneous time records.  <u>Scott v. City of New York</u>, <u>supra</u>, 643 F.3d at 58.  The burden is on the attorney requesting fees to provide sufficient evidence, including production of contemporaneous time records or sufficient explanation for their absence.  <u>Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986), <u>citing</u> <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, <u>supra</u>, 711 F.2d at 1148, 1154.

In addition, in order for me to make a determination as to the reasonableness of the award sought, plaintiffs must provide sufficient information regarding the qualifications of the attorneys and the paralegals for whom fees are sought.  <u>See</u>, <u>e.g.</u>, <u>Yea Kim v. 167 Nail Plaza, Inc.</u>, 05 Civ. 8560(GBD)(GWG), 2009 WL 77876 at *2, *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.) (reducing attorney and paralegal rates where no information was provided to the court regarding their backgrounds) (adopting Report and Recommendation of Gorenstein, M.J.); <u>Tlacoapa v. Carregal</u>, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing paralegal rate where limited information was provided regarding paralegals' qualifications and the nature of their work).

1.  <u>Attorneys' Fees Requested</u>

Plaintiffs are represented by attorneys at the firms of Outten & Golden and Shavitz Law Group.  Class counsel have represented plaintiffs without compensation under a contingent fee arrangement (Swartz Decl., ¶ 52).  Class counsel seek one-third of the $3,000,000.00 settlement fund, or $1,000,000.00, as attorneys' fees and costs in the amount of $17,037.51. Furthermore, counsel have submitted time records reflecting $267,091.00 in attorney and staff fees (Swartz Decl., Ex. B, C; Shavitz Decl., Ex. A, B; Swartz Suppl. Decl., Ex. A, B). Plaintiffs' counsel contend that fees should be calculated using the percentage method rather than the lodestar method. Plaintiffs' counsel argue that awarding one third of the settlement fund is preferable as a matter of practice because it incentivizes attorneys to litigate cases efficiently and with the highest settlement amount, it promotes early resolution, and it preserves judicial resources because it relieves the court of the obligation of evaluating fee petitions  (Pls. Fees Mem. at 4-6). Counsel also argue that their requested fee is warranted because they took a substantial risk in prosecuting this case in the face of contrary legal precedent and obtained a favorable result (Pls. Suppl. Fees Mem.).

There have been no objections to the attorneys' fees as described in the notices (Roe Decl., ¶ 13).

Whether an attorneys' fee award is reasonable is within the discretion of the court.  Black v. Nunwood, Inc., 13 Civ. 7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015) (Woods, D.J.) (collecting cases).  In Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 52-53, the Second Circuit noted that, in common fund cases, "fixing a reasonable fee becomes even more difficult because the adversary system is typically diluted -- indeed, suspended -- during fee proceedings" since the defendants "have little interest in how [the fund] is distributed and thus no incentive to oppose the fee" and "class members -- the intended beneficiaries of the suit -- rarely object."  Thus, in common fund cases, the district court must assess a fee award "based on scrutiny of the unique circumstances of each case, and a jealous regard to the rights of those who are interested in the fund."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks and citation omitted).

"Although [the Second Circuit] ha[s] acknowledged that 'the trend in this Circuit is toward [awarding fees on] the percentage [of the fund] method,' it remains the law in this Circuit that courts 'may award attorneys' fees in common fund cases under either the "lodestar" method or the "percentage of

the fund" method.'"  McDaniel v. Cty. of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (collecting cases), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 121.  Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund.  McDaniel v. Cty. of Schenectady, supra, 595 F.3d at 418.  Under the lodestar method, the "lodestar" is calculated as the product of a reasonable hourly rate and the reasonable number of hours required by the case, creating a presumptively reasonable fee.  Perez v. AC Roosevelt Food Corp., 744 F.3d 39, 44 (2d Cir. 2013).  While "there is a 'strong presumption' that the lodestar figure is reasonable," it may be adjusted by a multiplier when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010).

"[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems."  McDaniel v. Cty. of Schenectady, supra, 595 F.3d at 418-19 (describing the problems with and benefits of both methods).  Ultimately, common fund fee awards must be "made with moderation" and the court must "act as a fiduciary who must serve as a guardian of the rights of absent class members."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 52 (internal

23

quotation marks and citations omitted).  Accordingly, in this Circuit, both the lodestar and the percentage of the fund methods are

> guided by the traditional criteria in determining a reasonable common fund fee, including:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 50 (internal quotation marks and citation omitted, alteration in original).  Where the percentage-of-the-fund method is used, the Second Circuit, "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage," Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 50.  See also Cassese v. Williams, 503 F. App'x 55, 59 (2d Cir. 2012) (summary order); Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007).

I addressed the recent case law in this Circuit regarding the frequent award of one-third of the common fund as fees in FLSA cases in Lizondro-Garcia v. Kefi LLC, No. 12 Civ. 1906 (HBP), 2015 WL 4006896 (S.D.N.Y. July 1, 2015).  There, I agreed with the decision of the Honorable William H. Pauley, III, United States District Judge, in Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (Pauley, D.J.) that there

24

are reasons to be "wary" of the percentage-of-fund method in FLSA
cases and chose to analyze the reasonableness of class counsels'
fee application pursuant to the lodestar method and the
Goldberger criteria.  Lizondro-Garcia v. Kefi LLC, supra, 2015 WL
4006896, at *4; accord Gonzalez v. Scalinatella, Inc., 13 Civ.
3629 (PKC)(MHD), 2015 WL 3757069 at *18-*19 (S.D.N.Y. June 12,
2015) (Dolinger, M.J.); Flores v. Mamma Lombardi's of Holbrook,
Inc., --- F. Supp. 3d ---, 12 Civ. 3532 (GRB), 2015 WL 2374515 at
*12-*13 (E.D.N.Y. May 18, 2015); Ortiz v. Chop't Creative Salad
Co., 13 Civ. 2541 (KNF), 2015 WL 778072 at *19 (S.D.N.Y. Jan. 16,
2015) (Fox, M.J.).

          Plaintiffs' counsel seek to distinguish Fujiwara
because this case involved more complex issues that posed
substantial risks to recovery should the case have gone to trial.
Unlike Fujiwara, which involved only factual issues concerning
the hours plaintiff worked, the wages they were paid and whether
defendant was entitled to the tip credit, this is a
misclassification case in which plaintiffs sought to represent
more than 1,350 ABMs across the country and which involved
substantially more difficult factual and legal issues.  The risks
in this case include the lack of clear precedent in favor of
class certification, arbitration agreements that threatened to
delay or derail the litigation for certain class members, and the

complexity of the liability question (Pls. Fees Mem. at 9-13; Pls. Suppl. Fees Mem. at 1-8; Swartz Decl. ¶ 65).  Plaintiffs' counsel also cite cases in this Circuit that have granted one-third of a settlement fund as a reasonable fee in wage and hour class action settlements (Pls. Suppl. Fees Mem. at 10-11 fn. 12). Finally, counsel claim that one-third of the settlement fund is the "market rate" (Pls. Suppl. Fees Mem. at  at 11, citing Henry v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427 at *15 (S.D.N.Y. May 23, 2014) (McMahon, D.J.)).

     A key concern in the recent caselaw regarding fee application analysis in FLSA settlements is the need for robust judicial analysis rather than the ultimate size of the award. See Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 436 ("Approval of class action settlements and fee applications is precisely where judicial scrutiny, not judicial deference, is most needed.").  In cases similar to this one, I have awarded less than one-third of the settlement fund to provide counsel with reasonable compensation for both their efforts in a complex case and the risk of contingent fee litigation.  See, e.g., Ballinger v. Advance Magazine Publishers, Inc., No. 13 Civ. 4036 (HBP) (S.D.N.Y. Aug. 11, 2015) (awarding counsel their requested fee of 11.11% of a $5,850,000.00 settlement fund).  Therefore, consistent with my obligation to approach fee applications with

"a jealous regard to the rights of those who are interested in the fund," Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks and citation omitted) I shall apply the lodestar method here and consider counsel's arguments in determining the appropriate multiplier.  As demonstrated below, the lodestar and multiplier analysis yields an award to plaintiffs' counsel of $500,000.00 or 16.67% of the settlement fund.

      2.  The Lodestar

Counsel argue that the lodestar and muliplier calculation also supports their request for a $1,000,000.00 fee or one-third of the settlement fund.  Plaintiffs' counsel claim that both their rates and the number of hours they expended are reasonable.  They also argue that the 3.9 multiplier that they seek is within the range of multipliers regularly awarded in this district and is reasonable in light of the complexity of the litigation, the contingent nature of the case, counsel's skill, and the additional time they will expend implementing, monitoring and enforcing the settlement.

Class counsel spent the following hours[3] on this matter and seek the rates set forth below:

<u>O&G</u>

<u>Justin M. Swartz, Esq.</u>
Partner - 16 years experience

49.3 hours @ $725/hour                                                 35,742.50

<u>Jahan C. Sagafi, Esq.</u>
Partner - 13 years experience

00.5 hours @ 590/hour                                                    295.00

---

[3]In support of their application for fees, plaintiffs' counsel have submitted computerized compilations of contemporaneous time records describing how they spent the hours for which fees are sought (Swartz Decl., Ex. C; Shavitz Decl., Ex. B; Swartz Suppl. Decl., Ex. A).  Such transcriptions of contemporaneous time records have been found to satisfy the requirements set forth above.  <u>See</u>, <u>e.g.</u>, <u>Cruz v. Local Union No. 3 of Int'l Bhd. Of Elec. Workers</u>, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); <u>Tri-Star Pictures, Inc. v. Unger</u>, 42 F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.) ("The actual original time sheets are not necessary; submitting an affidavit and attaching a computer printout of the pertinent contemporaneous time records is acceptable."); <u>Lenihan v. City of New York</u>, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.) ("The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court.").

<u>June E. Turner, Esq.</u>[4]
Associate/Partner - 8 years experience

00.5 hours @ $475/hour                                    237.50

<u>Naomi Sunshine, Esq.</u>
Staff Attorney - 9 years experience

01.8 hours @ $475/hour                                    855.00

<u>Jennifer L. Liu, Esq.</u>
Associate - 6 years experience

97.2 hours @ $400/hour                                 38,880.00

<u>Amber C. Trzinski, Esq.</u>
Associate - 5 years experience

03.1 hours @ $360/hour                                  1,116.00

<u>Sally J. Abrahamson, Esq.</u>
Associate - 5 years experience

00.1 hours @ $360/hour                                     36.00

<u>Michael J. Scimone, Esq.</u>
Associate - 5 years experience

00.6 hours @ $360/hour                                    216.00

<u>Michael Litrownik, Esq.</u>
Associate - 4 years experience

86.1 hours @ $325/hour                                 27,982.50

---

[4] Mr. Swartz's initial declaration lists Ms. Turner's hours as that of an associate and his second supplemental declaration refers to her as a partner (Swartz Decl., Ex. B; Swartz Second Suppl. Decl., ¶ 5).  Given the lack of explanation, my analysis follows the time sheet, which lists Ms. Turner's work on this matter as that of an associate.

Deirdre A. Aaron, Esq.
Associate - 4 years experience

01.2 hours @ $325/hour                                          390.00

Christopher M. McNerney, Esq.
Associate - 2 years experience

00.2 hours @ $270/hour                                          54.00

Monique E. Chase, Esq.
Associate - 2 years experience

02.5 hours @ $270/hour                                         675.00

Julia Rabinovich, Esq.
Associate - 2 years experience

03.5 hours @ $270/hour                                         945.00

Chauniqua D. Young, Esq.
Associate - 2 years experience

4.00 hours @ $270/hour                                       1,080.00

Alex Bonilla, Esq.
Contract Attorney - 2 years experience

23.7 hours @ $270/hour                                       6,399.00

Olivia J. Quinto, Esq.
Associate - 1 year experience

2.00 hours @ $250/hour                                         500.00

**SLG**

Gregg I. Shavitz, Esq.
Partner - 20 years experience

121.2 hours @ $550/hour                                     66,660.00

<u>Susan H. Stern, Esq.</u>
Counsel - 24 years experience

75.0 hours @ $500/hour                    37,500.00

<u>Christine Duignan, Esq.</u>
Counsel - 23 years experience

14.4 hours @ $450/hour                     6,480.00

<u>Paolo Meireles, Esq.</u>
Associate - 4 years experience

77.0 hours @ $300/hour                    23,100.00

**TOTAL**                              **$249,143.50**

     Class counsel have also provided the qualifications of each attorney for whom fees are sought (Swartz Decl., ¶¶ 4-28; Shavitz Decl., ¶¶ 4-13; Swartz Second Suppl. Decl., ¶¶ 4-18).

     Plaintiffs also seek compensation for the following paralegal work:

01.7 hours @ $250/hour                       425.00

40.7 hours @ $235/hour                     9,564.50

18.4 hours @ $220/hour                     4,048.00

39.1 hours @ $100/hour                     3,910.00

**TOTAL**                              **$ 17,947.50**

The foregoing work was performed by a total of 17 paralegals. All of the paralegal for whom a rate of $100/hour is sought work or worked for the Shavitz Law Group.  Counsel also provided a description of the background and qualifications of each

31

paralegal for whom fees are sought except for two entries for "part-time paralegal" listed in the fee application (Swartz Decl., ¶¶ 15-28; Shavitz Decl., ¶¶ 14-15).

a.  Reasonable
    Hourly Rates

The hourly rates requested by counsel, which range from $250 to $725 for Outten & Golden's attorneys and $300 to $550 for the Shavitz Law Firm's attorneys, are higher than the reasonable hourly rates awarded in this district for lawyers with similar experience.  The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir. 2007).  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006).  In determining reasonable hourly rates, a court should first examine the attorneys' experience.  Kahlil v. Original Old Homestead Rest., Inc., supra, 657 F. Supp. 2d at 475.  In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the

32

District, but should also consider any evidence offered by the parties.  Farbotko v. Clinton Cty., 433 F.3d 204, 208-09 (2d Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 n.16 (2d Cir. 2005); Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

Counsel for plaintiffs are experienced in FLSA actions. Mr. Swartz's declaration describes the Outten & Golden firm as a "40+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations." (Swartz Decl., ¶ 1). Outten & Golden regularly represents plaintiffs in this Court in employment related litigation and have an excellent and well-deserved reputation.  Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 473.  Mr. Shavitz's declaration describes the Shavitz Law Group as "a 6-attorney firm based in Boca Raton, Florida, that focuses on representing workers as plaintiffs in employment-related matters, including claims based upon individual and class-wide violations of state and federal wage and hour laws." (Shavitz Decl., ¶ 1).  The firms regularly act as class counsel

in wage and hour collective and class actions in this district
(Swartz Decl., ¶ 8; Shavitz Decl., ¶¶ 6, 21).  Plaintiffs'
counsel's declarations also describe the experience and
qualifications of each attorney who billed time to the
litigation.  These include the attorneys' law school graduation
dates, bar admissions, years of practice, experience in
employment litigation, and relevant information regarding the
attorneys' speaking engagements and publications in the field
(Swartz Decl., ¶¶ 1-14; Shavitz Decl., ¶¶ 7-13; Swartz Second
Suppl. Decl., ¶¶ 4-15).

Although courts in this district have occasionally
awarded hourly rates of $550 and $600 to experienced senior
litigators, FLSA litigators are rarely awarded over $450 per
hour.  See Gonzalez v. Scalinatella, Inc., supra, 2015 WL 3757069
at *20-*22; Kim v. Kum Gang, Inc., 12 Civ. 6344 (MHD), 2015 WL
3536593 at *2 n.16 (S.D.N.Y. June 5, 2015) (Dolinger, M.J.).[5]

---

[5] Accord Watkins v. Smith, 12 Civ. 4635 (DLC), 2015 WL
476867 at *3 (S.D.N.Y. Feb. 5, 2015) (Cote, D.J.); Easterly v.
Tri-Star Transport Corp., 11 Civ. 6365 (VB), 2015 WL 337565 at
*10 (S.D.N.Y. Jan. 23, 2015) (Briccetti, D.J.) (adopting Report
and Recommendation of Davison, M.J.); Farmer v. Hyde Your Eyes
Optical, Inc., 13 Civ. 6653 (GBD)(JLC), 2015 WL 2250592 at *14
(S.D.N.Y. May 13, 2015) (Cott, M.J.); Black v. Nunwood, Inc.,
supra, 2015 WL 1958917 at *5-*6; Patino v. Brady Parking, Inc.,
11 Civ. 3080 (AT)(DF), 2015 WL 2069743 at *2-*3 (S.D.N.Y. Apr.
30, 2015) (Freeman, M.J.); Rosendo v. Everbrighten Inc., 13 Civ.
7256 (JGK)(FM), 2015 WL 1600057, at *8-*9 (S.D.N.Y. Apr. 7, 2015)
(continued...)

Indeed, plaintiffs cite no cases in support of the rates requested.[6]  Nonetheless, I note that in 2012 a court in this district approved slightly higher rates for the Outten & Golden firm.  See Torres v. Gristede's Operating Corp., 04 Civ. 3316 (PAC), 2012 WL 3878144 at *3-*4 (S.D.N.Y. Aug. 6, 2012) (Crotty, D.J.), aff'd, 519 F. App'x 1, 3-4 (2d Cir. 2013) (summary order) (awarding rates of up to $550 per hour).  Consistent with this recent decision and the other authorities cited above, and considering counsel's experience, skills and level of contribution to the work, I conclude that the rates they seek are too high and that the hourly rates set forth below are reasonable.  The rates I am awarding are higher than the rates typically awarded in this district and are meant to compensate counsel for their experience and their efforts in successfully litigating and settling this case at an early stage:

---

[5](...continued)
(Maas, M.J.) (Report and Recommendation), adopted by, 2015 WL 4557147 (S.D.N.Y. July 28, 2015) (Koeltl, D.J.); Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 437.

[6] In support of their requested rates, Mr. Shavitz's declaration cites to cases in this district that awarded the Shavitz Law Firm and Outten & Golden the requested one-third of the settlement fund (Shavitz Decl., ¶ 21).  These decisions do not address the reasonableness of the hourly rates requested.

| Name | Firm | Hours | Hourly Rate Awarded | Preliminary Lodestar |
|------|------|-------|---------------------|----------------------|
| Justin M. Swartz | O&G | 49.3 | 550 | 27,115.00 |
| Jahan C. Sagafi | O&G | 00.5 | 500 | 250.00 |
| June E. Turner | O&G | 00.5 | 350 | 175.00 |
| Naomi Sunshine | O&G | 01.8 | 400 | 720.00 |
| Jennifer L. Liu | O&G | 97.2 | 325 | 31,590.00 |
| Amber C. Trzinski | O&G | 03.1 | 300 | 930.00 |
| Sally J. Abrahamson | O&G | 00.1 | 300 | 30.00 |
| Michael J. Scimone | O&G | 00.6 | 300 | 180.00 |
| Michael Litrownik | O&G | 86.1 | 275 | 23,677.50 |
| Deirdre A. Aaron | O&G | 01.2 | 275 | 330.00 |
| Christopher M. McNerney | O&G | 00.2 | 250 | 50.00 |
| Monique E. Chase | O&G | 02.5 | 250 | 625.00 |
| Julia Rabinovich | O&G | 03.5 | 250 | 875.00 |
| Chaniqua D. Young | O&G | 4.00 | 250 | 1,000.00 |
| Alex Bonilla | O&G | 23.7 | 250 | 5,925.00 |
| Olivia J. Quinto | O&G | 2.00 | 200 | 400.00 |
| Gregg I. Shavitz | SLG | 121.2 | 500 | 60,600.00 |
| Susan H. Stern | SLG | 75.0 | 475 | 35,625.00 |
| Christine Duignan | SLG | 14.4 | 425 | 6,120.00 |
| Paolo Meireles | SLG | 77.0 | 275 | 21,175.00 |
| **TOTAL:** | | **563.9** | | **$217,392.50** |

As to the requested fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $125 for paralegal

36

work have been found to be reasonable.  See, e.g., Gonzalez v. Scalinatella, Inc., supra, 2015 WL 3757069 at *22 (awarding paralegals hourly rates of $100 to $105); Guallpa v. N.Y. Pro Signs Inc., 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393 at *10 (S.D.N.Y. May 27, 2014) (Maas, M.J.) (reducing paralegal hourly rate to $125) (Report and Recommendation), adopted by 2014 WL 4105948 (S.D.N.Y., Aug. 18, 2014) (Schofield, D.J.); Viafara v. MCIZ Corp., 12 Civ. 7452 (RLE), 2014 WL 1777438 at *14 (S.D.N.Y. Apr. 30, 2014) (awarding an hourly rate of $125 to paralegal). Accordingly, I find that a reasonable hourly rate for the Outten & Golden paralegals for whom background information was provided to be $125 and the requested $100 per hour for the Shavitz Law Group paralegals.  Applying these rates to the work of the 16 paralegals for whom background information was provided yields a product of $9,210.00.

        b.    Reasonable
            Number of Hours

     The party seeking attorneys' fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Wong v. Hunda Glass Corp.,

09 Civ. 4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (Ellis, M.J.). Courts "should exclude . . . hours that were not reasonably expended," such as where there is overstaffing or the hours are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, supra, 461 U.S. at 434 (internal quotation marks omitted).

The hours billed by plaintiffs' counsel to this matter are reasonable. Although the time records reflect that a large number of attorneys were assigned to and billed to the matter, the vast majority of the work, totaling 529.50 hours, was done by a group of 7 attorneys, four at Outten & Golden (Swartz, Liu, Litrownik, and Bonilla) and three at the Shavitz Law Group (Shavitz, Stern, and Meireles). The attorneys outside of this group billed less than 50 hours; these hours are not excessive or redundant and the descriptions of the services provided are specific. These hours are, therefore, reasonable. I note that there are dozens of entries reflecting over 15 hours of paralegal time billed by the Shavitz Law Group using the phrase "Communication with witness regarding information." This and similar entries are vague and do not by themselves provide enough information to assess the reasonableness of the hours billed. However, Mr. Shavitz's declaration states that the paralegals were involved in interviewing clients and preparing their

38

declarations (Shavitz Decl., ¶¶ 14-15).  Therefore, this time, which was directed to the gathering of information from the potential plaintiffs that contributed to the successful settlement, is reasonable and compensable.

I also find that 81.5 hours of paralegal time for which plaintiffs' counsel seek compensation are reasonable.

Applying the reduced rates set forth above to the hours for which counsel seeks compensation yields a total lodestar of $226,602.50.

c.   Application of
     <u>a Multiplier</u>

Under the lodestar method, as applied in common fund cases, the <u>Goldberger</u> criteria[7] "indicate whether a multiplier should be applied to the lodestar."  <u>McDaniel v. Cty. of Schenectady</u>, <u>supra</u>, 595 F.3d at 423.  A $1,000,000.00 fee award would represent a 4.41 multiplier of my adjusted lodestar figure. Plaintiffs' counsel cite cases in this district awarding multipliers of up to eight times the lodestar (Pls. Fees Mem. at

---

[7]The <u>Goldberger</u> criteria are similar to those in <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany</u>, <u>supra</u>, 522 F.3d at 184 and are applied in common fund cases.  <u>See</u> <u>McDaniel v. Cty. of Schenectady</u>, <u>supra</u>, 595 F.3d at 419-23 (discussing the applicability of the criteria in <u>Arbor Hill</u> and <u>Goldberger</u> to statutory fee-shifting and common fund cases, respectively).

18-19).  In <u>Fujiwara</u>, Judge Pauley determined that "[t]here is little consensus in this district on the appropriate range for lodestar multipliers," and concluded that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."  <u>Fujiwara v. Sushi Yasuda Ltd.</u>, <u>supra</u>, 58 F. Supp. 3d at 438-39.  As discussed above, this case is more complex than the average FLSA case, and, for the reasons discussed below, I conclude a multiplier of 2.21 to the lodestar is warranted and is supported by the <u>Goldberger</u> analysis.

                                 i.    Counsel's
                                       <u>Time and Labor</u>

       Plaintiffs' counsel's efficient and effective representation of plaintiffs in bringing this action and securing the settlement warrant an increase in the lodestar figure. Plaintiffs' counsel reasonably expended approximately 560 attorney hours and 80 legal staff hours over almost 2 years to secure the settlement and reach the point of final approval. During this time, plaintiffs' counsel conducted an investigation into plaintiffs' claims and defendant's business practices, interviewed the named and opt-in plaintiffs, communicated with plaintiffs to keep them apprised of the status of the case,

represented plaintiffs at a mediation, successfully negotiated a settlement with defendant, and proceeded efficiently through the litigation.  Plaintiffs' counsel will also spend additional hours to administer the settlement.

> ii.   The Litigation's
>        <u>Magnitude and Complexity</u>

Plaintiffs' counsel also correctly note that this case is larger and more complex than the typical FLSA collective action.  "The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." <u>Sukhnandan v. Royal Health Care of Long Island LLC</u>, <u>supra</u>, 2014 WL 3778173 at *10.  "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  <u>Siler v. Landry's Seafood House-North Carolina, Inc.</u>, 13 Civ. 587 (RLE), 2014 WL 2945796 at *9 (S.D.N.Y. June 30, 2014) (Ellis, M.J.); <u>see also</u> <u>Henry v. Little Mint, Inc.</u>, <u>supra</u>, 2014 WL 2199427 at *13.  Here, the FLSA settlement resolves the claims of 588 FLSA class members and 781 Rule 23 class members from three different states. There is overlap between the classes and the settlement negotiated by

41

counsel took into account the various circumstances presented. Therefore, this factor also favors the multiplier.

### iii. The Risk of Litigation

Plaintiffs' counsel faced risk because they represented plaintiffs on a contingent basis and have received no fee payments for their work since the commencement of work on this action in 2013.  "Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award."  Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) (quotation marks and citation omitted); accord Henry v. Little Mint, Inc., supra, 2014 WL 2199427 at *14.  "Risk falls along a spectrum, and should be accounted for accordingly."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 54.  In addition, victory in a contested suit would have been far from clear as there was case law contrary to plaintiffs' position (see Pls. Fees Mem. at 12-13 (citing cases)).  Accordingly, the third Goldberger criterion also supports a reasonable multiplier.

iv.   The Quality
of Representation

The quality of class counsel and their representation
of plaintiffs also supports the application of a multiplier.  "To
determine the 'quality of the representation,' courts review,
among other things, the recovery obtained and the backgrounds of
the lawyers involved in the lawsuit."  Taft v. Ackermans, 02 Civ.
7951 (PKL), 2007 WL 414493 at *10 (S.D.N.Y. Jan. 31, 2007)
(Leisure, D.J.); See also Whitehorn v. Wolfgang's Steakhouse,
Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (Sand, D.J.) ("There is
no dispute that Plaintiffs' counsel are qualified and experienced
in class action law and wage and employment litigation in New
York.").  Both Outten & Golden and the Shavitz Law Group have
significant experience representing employees in wage and hour
class and collective actions in this district (Swartz Decl., ¶ 8
(listing cases), ¶ 42; Shavitz Decl., ¶ 16).  As noted above, the
Outten & Golden firm has been recognized for having an excellent
reputation in this district in the field of employment
litigation.  See Beckman v. KeyBank, N.A., supra, 293 F.R.D. at
473; Torres v. Gristede's Operating Corp., supra, 2012 WL 3878144
at *3-*4.  Class counsel conducted a thorough investigation of
plaintiffs' claims through in-depth interviews with plaintiffs
and three opt-in plaintiffs, review of documents obtained from

plaintiffs and defendant, background research on defendant, and through legal research on the factual and legal issues unique to this group of plaintiffs (See Swartz Decl. ¶¶ 29-32, 65; Pls. Fees Mem. at 11-12; Pls. Suppl. Fees Mem. at 2-7).  Class counsel's work on plaintiffs' behalf, aided by their experience, ultimately aided plaintiffs in the progress of the litigation and in reaching a fair settlement.  I conclude that the fourth criterion also weighs in favor of the 2.21 multiplier.

> v.   Relationship of
> the Fees to the Settlement

Under Goldberger, "[c]ourts consider the size of a settlement to ensure that the [fees] awarded do[] not constitute a windfall."  Sukhnandan v. Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at *13.  "Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable."  Sukhnandan v. Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at *13, citing In re Gilat Satellite Networks, Ltd., 02 Civ. 1510 (CPS)(SMG), 2007 WL 2743675, *16 n. 41 (E.D.N.Y. Sept. 18, 2007).  Plaintiffs' counsel estimate plaintiffs' lost wages to be approximately $6,122,448.98 (Swartz Decl., ¶ 63).  In this light, an award of $500,000.00 is not a windfall considering that it

represents 16.67% of the $3,000,000.00 settlement fund and compensates counsel for the approximately 640 of attorney and paralegal hours spent securing a favorable settlement for plaintiffs.  Even after attorneys' fees, costs, service awards and claims administrator fees are distributed from the fund, plaintiffs will still recover a significant amount of their estimated actual damages.  Thus, this criterion also weighs in favor of the fee award.

vi.   Public Policy
Considerations

Finally, "[w]hen determining whether a fee award is reasonable, courts consider the social and economic value of the class action, 'and the need to encourage experienced and able counsel to undertake such litigation.'"  Siler v. Landry's Seafood House-North Carolina, Inc., supra, 2014 WL 2945796 at *11, quoting In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (Pollack, D.J.).  "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]."  Henry v. Little Mint, Inc., supra, 2014 WL 2199427 at *15 (internal quotation marks and citation omitted, alteration in original).  However, these public policies must be balanced against the need

45

to award fees "with an eye to moderation," particularly when the fee application is unopposed and there is little incentive for plaintiffs to object when the impact on their individual potential recovery of any increase or decrease in the fee award is incremental.  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks and citation omitted).

Public policy also favors consistency with respect to fee awards; in the absence of countervailing factors such as differences in the qualifications of counsel or the complexity of the issues, there should not be wide disparities in the fee awards to the same firm (or attorneys with similar qualifications) in different litigations involving similar legal and factual issues.  See generally Wells Fargo Bank N.A. v. Walls, 1:12-cv-664 (LMB/IDD), 2013 WL 869902 at *3 (E.D. Va. Mar. 4, 2013), aff'd, 543 F. App'x 350 (4th Cir. 2013) (approving hourly rates because they were consistent with the rates previously awarded to the same attorneys).

I recently participated in the settlement of another mis-classification case entitled Ballinger v. Advanced Magazine Publishers, Inc., supra, 13 Civ. 4036 (HBP) (S.D.N.Y.).[8]  The

---

[8]All of the information set forth herein concerning the Ballinger case is disclosed in the publicly available filings in that matter.

principal issue in that case was whether student interns who worked at a number of national magazines were entitled to the protection of the FLSA and the New York State Labor Law.  Like this action, Ballinger was brought as collective action with respect to the FLSA claims and as a class action with respect to parallel state law claims.  Ballinger was commenced before the Court of Appeals' decision in Glatt v. Fox Searchlight Pictures, Inc., 791 F.3d 376 (2d Cir. 2015), and the outcome at the time the action was commenced was far from certain.  O&G represented plaintiffs in Ballinger and successfully negotiated a class-wide settlement to be funded with a contribution of $5.85 million from defendants.  In Ballinger, O&G sought and received a fee award of $650,000 or approximately 11.11 % of the settlement fund.  The fee award represented compensation for approximately 920 hours of attorney time.  Counsel's lodestar in Ballinger was approximately $368,000; the fee award was approximately 1.76 times the lodestar.  In contrast the fee sought here -- $1,000,000 -- is 1/3 of the settlement amount and more than four times counsel's lodestar after the reduction of counsel's hourly rates.

There can be no question that lawsuits are not fungible goods, and any experienced litigator will attest that the time and effort necessary to litigate a claim successfully is not necessarily proportional to the amount in issue.  Nevertheless,

the fact that every lawsuit is unique does not preclude lawsuits from being similar, and the claims in <u>Ballinger</u> and this action exhibit many similarities.  Both involve claims concerning the scope of the coverage afforded by the FLSA and parallel state laws.  <u>Ballinger</u> involved only the FLSA and the New York Labor Law.  In contrast, this action involves the FLSA and the labor laws of three different states.  However, counsel were able to settle this matter in approximately 60% of the hours it took to settle <u>Ballinger</u>.

Given the size of the award in <u>Ballinger</u> and the similarities and differences between that action and this one, I conclude that the multiplier applied here must be set to yield a product that is substantially less than the fee awarded in <u>Ballinger</u>.  In doing so, I am not suggesting that <u>Ballinger</u> sets some immutable benchmark against which all other fee awards to O&G, or counsel of similar repute, must be measured.  Counsel gain experience over time which ordinarily enhances the value of their services.  Some cases are unusually complex or present novel questions.  The conduct of an adversary can result in increased expenditures of time and effort.  The degree of success can vary from lawsuit to law suit.  And inflation can erode the value of a dollar over time.  Nevertheless, in the absence of some basis to distinguish on which to distinguish this case from

Ballinger (and none has been suggested), it is impossible to justify a higher fee award in this case, given that this case was of similar complexity, required fewer hours and resulted in a smaller settlement, than Ballinger.

### vii.   Summary

In light of the foregoing, I conclude that a reasonable Goldberger multiplier is 2.21, yielding a fee award of $500,000.

### F.   Costs

Class counsel also seek reimbursement of costs of $17,037.51 in connection with their representation of plaintiffs (Pls. Fees Mem. at 20-21).  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients."  Miltland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (Motley, D.J.), quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987).  Here, class counsel's expenses, including filing fees, travel expenses, postage charges and plaintiffs' share of the mediator fees, are reasonable and were incidental and necessary to the representation of the class.  I award class counsel reimbursement

of their requested litigation expenses in the amount of
$17,037.51.

G.  Named Plaintiffs'
    Service Awards

        The plaintiffs also request that the eight named
plaintiffs each receive service awards of $6,000.00 each and that
three opt-in plaintiffs receive service awards of $3,000.00 each.
Service awards, also called enhancement or incentive awards, are
common in class actions.  They "serve the dual functions of
recognizing the risks incurred by named plaintiffs and
compensating them for their additional efforts."  Parker v.
Jekyll & Hyde Entm't Holdings, LLC, 08 Civ. 7670 (BSJ)(JCF), 2010
WL 532960 at *1 (S.D.N.Y. Feb. 9, 2010) (Francis, M.J.); accord
Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 483.

        Here, the named plaintiffs and opt-in plaintiffs
initiated this action, assisted counsel's investigation and
prosecution of the claims by providing detailed factual
information and documents regarding their job duties and those of
other class members, the wages they were paid, the hours that
they worked and other relevant information, regularly made
themselves available to counsel, and seven of the plaintiffs and

opt-in plaintiffs provided detailed declarations in advance of the parties' mediation (Swartz Decl., ¶¶ 56-58).

The $57,000.00 total in service awards represents approximately .52% of the settlement fund.  This is well within the range of service awards recently approved in the Southern District of New York.  See, e.g., Beckman v. Keybank, N.A., supra, 293 F.R.D. at 483 (awarding incentive payments totaling 1.7% of $4,900,000.00 FLSA settlement); Johnson v. Brennan, 10 Civ. 4712 (CM), 2011 WL 4357376 at *2, 21 (S.D.N.Y. Sept. 16, 2011) (McMahon, D.J.) (awarding incentive payments totaling 9.1% of $440,000.00 FLSA/NYLL settlement); deMunecas v. Bold Food, LLC, 09 Civ. 0440 (DAB), 2010 WL 3322580 at *1, *11 (S.D.N.Y. Aug. 23, 2010) (Batts, D.J.) (awarding incentive payments totaling 3.1% of $800,000.00 FLSA/NYLL settlement).

Accordingly, I grant the requested service awards.


H.   Administrator Fees

Pursuant to the Settlement Agreement, plaintiffs retained Rust Consulting, Inc. as the claims administrator.  No class member objected to the fee as detailed in the notices.  The fee sought by the claims administrator of $23,000.00 is reasonable and is approved.

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, plaintiffs' motions (Docket Items 33, 35, 37) are granted in part and denied in part as follows:

1.   Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the following sub-classes are certified for settlement purposes:

- New York Class Members consist of all individuals who were employed as ABMs by Defendant in the State of New York from March 7, 2008 through July 7, 2014;

- New Jersey Class Members consist of all individuals who were employed as ABMs by Defendant in the State of New Jersey from March 7, 2012 through July 7, 2014; and

- Maryland Class Members consist of all individuals who were employed as ABMs by Defendant in the State of Maryland from March 7, 2011 through July 7, 2014;

2.   The Settlement Agreement is unconditionally approved.

3.   The "Effective Date" of the settlement shall be fourteen days following the last date this Final Approval

52

Order approving this Agreement is appealable (30 days after the entry of Judgment), if no appeal is filed.  If an appeal is taken, Section 1.10 of the Settlement Agreement governs.

4.  In accordance with the terms of the Settlement Agreement and after the Effective Date of this Order, the claims administrator shall distribute the funds in the settlement account by making the following payments:

- Paying the claims administrator fee of $23,000.00;
- Paying $517,037.51 to class counsel as reimbursement for litigation costs and payment of attorneys' fees; and
- Paying service awards of $6,000.00 to each of the named plaintiffs and service fees of $3,000.00 to each of the three opt-in plaintiffs, for a total award of $57,000.00 in service fees.

5.  Following the disbursement set forth above, the claims administrator shall distribute the remaining funds in the settlement account to collective and class members in accordance with the allocation plan described in the Settlement Agreement.

6.  I shall retain jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds.  The

53

parties shall abide by all terms of the Settlement Agreement, which are incorporated by reference herein, and this Order.

7.   Upon the Effective Date of this Order, this litigation shall be dismissed with prejudice, and all Settlement Class members who have not excluded themselves from the settlement or who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the Settlement Agreement.

8.   The Clerk of the Court is directed to mark Docket Items 33, 35 and 37 closed.

Dated:   New York, New York
         September 30, 2015

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Justin M. Swartz, Esq.
Michael N. Litrownik, Esq.
Outten & Golden LLP
29th Floor
3 Park Avenue
New York, New York  10016

54

Gregg I. Shavitz, Esq.
Susan H. Stern, Esq.
Paolo C. Meireles, Esq.
Shavitz Law Group, P.A.
Suite 404
1515 South Federal Highway
Boca Raton, Florida   33432

Thomas A. Linthorst, Esq.
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey   08540